RAN MUKHERJEE, P.C.
240 Kent Ave, Suite B-13
Brooklyn, NY 11249

Telephone: (646) 998-4240
Fax: (917) 591-4999
Email: rm@rmlawny.com



March 26, 2024

Via ECF
Magistrate Judge Hon. Gabriel W. Gorenstein
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

**Re:** *Icon International, Inc. v. Elevation Health, LLC* **SDNY Case No. 1:22-cv-04304**
<u>Withdrawal of Bryan McKenna as Counsel</u>

Dear Judge Gorenstein:

I represent Defendant Elevation Health, LLC ("Elevation") and write in response to the letter filed Friday March 22, 2024, by Bryan McKenna, the attorney for all the other parties, informing the Court that he is no longer admitted to practice law. ECF No. 118.

Mr. McKenna represented not only the Plaintiff, as his latest letter states (and referring to his "client" in the singular), but each of the Third-Party Defendants as well. It is not clear whether he has informed all his clients in accordance with NYCCRR §1240.15(b) (requiring notification of each client by certified mail and email within 10 days of entry of an order of disbarment).

Inexplicably, Mr. McKenna delayed informing the Court of his impending disbarment for nearly four months. The enclosed order of disbarment shows that Mr. McKenna filed a motion to be removed from the bar on December 6, 2023, accompanied by his affidavit of resignation dated November 20, 2023. Yet he only e-filed this letter on March 22, 2024 (characteristically, the letter is backdated March 20, 2024—just as Mr. McKenna backdated the discovery responses

1

due October 19, 2023, which he only served the following week—but the misleading date on the letter should be disregarded).

Regardless of Mr. McKenna's conduct, the Plaintiff and the Third-Party Defendants remain bound by his acts and omissions, including the failure to file any opposition to Elevation's motion for sanctions (which was due March 20, 2024). As this Court has properly ruled, that motion is unopposed. ECF No. 117. "The disbarment of a lawyer creates no 'nullities,' the person involved simply loses all license to practice law[.]" *Dunn v. Eickhoff*, 35 N.Y.2d 698, 699 (1974); *see also Arrowhead Capital Finance, Ltd. v. Cheyne Specialty Finance Fund L.P.*, 32 N.Y.3d 645 (2019) (reaffirming *Dunn* and extending its holding that an attorney's violations of another section of the Judiciary Law likewise did not render his actions a nullity).

The usual rule therefore remains in effect. A client-principal is "bound by the acts of his lawyer-agent." *Pioneer Investment Svcs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 396-97 (1993). This rule rests upon well-settled principles of agency law. *Maples v. Thomas*, 132 S.Ct. 912, 922 (2012).

Neither Mr. McKenna nor any of his clients took action to seek an extension of time to respond to the motion for sanctions (or to seek extension of discovery deadlines), to allow time to substitute new counsel, in the months during which they knew his disbarment was imminent.

In fact, the record in this case supports a theory of fraud on the Court—not only by Mr. McKenna, but by the parties, in particular Plaintiff Icon International, Inc. ("Icon") and Third-Party Defendant Clarence Lee ("Mr. Lee").

As Elevation alleged in its Amended Counterclaim and Third-Party Complaint, there was a conspiracy to use Third-Party Defendant Gypset, Inc. ("Gypset"), a shell company with no funds to repay Elevation, as a cover for fraudulent behavior intended to benefit Icon and Lee.

*See* **Exhibit A**, ECF No. 38 at ¶¶ 106-117.  Mr. McKenna was involved from the start, holding himself out as representing both Icon and Gypset.  *Id.* at ¶¶ 55-58

Consistent with this plan, Mr. Lee, CFO and principal of Icon, testified at deposition that Icon never had a joint venture, nor any agreement at all, with Gypset.  **Exhibit B**, Lee EBT transcript, at 24:16-25:9.  He was nonplussed by his own letter plainly representing that such a joint venture existed, which he denied having written, though he admitted it bore his signature (34:21-35:21). He denied that the invoice from Gypset, or Elevation's payment of $2.64M to Gypset, had any relationship to the Test Kits that Icon delivered (38:20-40:17).  He denied any knowledge of Mr. McKenna's letter of January 13, 2022, which stated that Mr. McKenna represented both Icon and Gypset and promised imminent delivery of Test Kits (50:7-53:6).  Mr. Lee also denied that Gypset ever paid money to Icon relative to the transactions at issue (72:5-8).

Mr. McKenna showed himself to be a willing tool of this scheme, representing Plaintiff Icon and all the Third-Party Defendants precisely in order to continue the scheme through litigation, protecting the well-moneyed entity Icon by placing the blame on shell company Gypset.  For example, before this Court on December 15, 2023, Mr. McKenna defended Icon by blaming Gypset—also his client—for failing to refund Elevation's money.  **Exhibit C**, Tr. at 24:17-25:2. This Court understandably expressed surprise: "you're making them sound like a really bad guy, so I was wondering if you were [representing Gypset]." *Id.* at 25:10-12.  To protect Icon's and Mr. Lee's denial of any relationship with Gypset, Mr. McKenna steadfastly refused to provide the proof of payment from Gypset to Icon—the critical evidence that the joint venture was not merely stated, but effectuated—until Elevation subpoenaed it from Chase Bank.  **Exhibit D** is that proof of payment.

Mr. McKenna also claimed his clients had performed thorough searches for responsive documents, although he refused to specify what those were, even after he was ordered to do so,

3

and even after Elevation cited that order to him. Ex. C, Tr. at 4:2-7:5. Through his false claims of searches for responsive documents, Mr. McKenna sought to support Mr. Lee's deposition testimony that Icon's IT department had run search terms to locate documents responsive to Elevation's discovery requests. Ex. B at 20:24-22:11. But, as explained at length in the pending motion for sanctions, Icon's 30(b)(6) witness Mr. Crosby definitively established that Icon did not in fact run search terms, or in fact take any action to locate and timely produce documents responsive to Elevation's discovery requests. Mr. Crosby's testimony thus demonstrates that the claims by both Mr. Lee and Mr. McKenna were lies.

Finally, in a status conference before Judge Vyskocil on October 12, 2023, Mr. McKenna claimed that he had not received Elevation's Requests for Admissions—even though they were sent by tracked mail (which showed it delivered) and by email (to the same email address that Mr. McKenna used both before and after that date). Based on Mr. McKenna's misrepresentations, Judge Vyskocil excused the failure to timely respond. Had Mr. McKenna and his clients been held to their failure to answer the Requests for Admission, and the critical matters therein admitted, this case would be over.

"Our judicial system generally relies on litigants to tell the truth and participate in discovery in good faith." *McMunn v. Mem. Sloan-Kettering Cancer Ctr.*, 191 F.Supp.2d 440, 445 (S.D.N.Y. 2002) (holding that dilatory and deceptive refusal to produce relevant evidence in discovery constituted a fraud on the court meriting dismissal and monetary fine).

Here, as demonstrated above, Icon and Mr. Lee participated in the fraud on this Court. Upon information and belief, Mr. McKenna's statements to me in early 2023 that he was about to be replaced by another law firm were related to the disbarment proceedings, but his clients decided to try their luck with him regardless.

4

But even were that not so, clients are bound by their attorney's fraud. *Chevron Corp. v. Donziger*, 833 F.3d 74, 149-50 (2d Cit. 2016) (citing *Pioneer Investment Svcs. Co.*, 507 U.S. 380, to hold clients accountable for attorney's extortion, wire fraud, money laundering, and obstruction of justice, "on the basis that they . . . retained" and "gave . . . their power of attorney" to the offending counsel). Mr. McKenna's disbarment prevents his practice of law in the future; it does not negate his acts in the past.

This Court has the inherent power to do whatever is reasonably necessary to deter abuse of the judicial process and assure a level playing field for all litigants. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (A court has authority to "manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases.") (internal quotation and citation omitted).

Here, given the egregious record of misrepresentations and attempts to withhold critical evidence, Plaintiff Icon and the Third-Party Defendants should not be given any more chances. They have made their proverbial bed; let them sleep in it. Elevation's pending motion for sanctions already argues for striking their pleadings, finding adverse inferences, and for attorney's fees. Recent developments only make those arguments stronger.

        Respectfully submitted,

        Ran Mukherjee
        *Counsel for Elevation Health, LLC*

Copies to:

Counsel of record via ECF

Icon International, Inc.
Four Stamford Plaza, 107 Elm St
Stamford, CT 06902

Gypset, Inc.
328 N. Sycamore Ave
Los Angeles, CA 90036

Dayna Zegarelli
328 N. Sycamore Ave
Los Angeles, CA 90036

Khalid Itum
1540 Vine Street
Los Angeles, CA 90028

| | | |
|---|---|---|
| Joe Davis<br>3025 W Sunset Blvd.<br>Los Angeles, CA 90026 | Clarence V. Lee III<br>54 Butternut Lane<br>Southport, CT 06890 | Mario Gonzales<br>5865 W Post Rd<br>Las Vegas, NV 89118 |