UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ICON INTERNATIONAL, INC.,
                                                          :
                              Plaintiff,                           OPINION AND ORDER
                                                          :        22 Civ. 4304 (MKV) (GWG)
            -against-
                                                          :

ELEVATION HEALTH LLC,                                     :

                              Defendant.                  :
-----------------------------------------------------------------X
**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

Plaintiff Icon International, Inc. ("Icon") brought this action against defendant Elevation

Health LLC ("Elevation") for breach of contract. See Complaint and Jury Demand, filed May

25, 2022 (Docket # 1) ("Compl."). Elevation then filed counterclaims against Icon and third-

party claims against third-party defendants Gypset, Inc. ("Gypset"), Dayna Robin-Zegarelli, Joe

Davis, Clarence V. Lee, III, Mario Gonzalez, and Khalid Itum. See Amended Counterclaim,

filed Dec. 8, 2022 (Docket # 38) ("Amended Counterclaim"); Amended Third-Party Complaint,

filed December 8, 2022 (Docket # 39) ("Amended Third-Party Complaint").[1] Icon and the third-

party defendants (collectively, "Icon Parties") failed to fulfill their discovery obligations. Before

the Court is Elevation's motion for sanctions related to those failures.[2] For the following

reasons, Elevation's motion is granted in part and denied in part.

---

[1] The allegations in the Amended Counterclaim and the Amended Third-Party Complaint
are identical. For simplicity, we cite only to the Amended Counterclaim.

[2] See Notice of Motion for Sanctions, filed Mar. 13, 2024 (Docket # 111) ("Mot.");
Declaration of Ran Mukherjee, filed Mar. 13, 2024 (Docket # 114) ("Mukherjee Decl.");
Memorandum of Law in Support, filed Mar. 13, 2024 (Docket # 116) ("Mem."); Memorandum
of Law in Opposition, filed Apr. 29, 2024 (Docket # 126) ("Icon Opp."); Declaration of Clarence
V. Lee III, filed Apr. 29, 2024 (Docket # 127) ("Lee Decl."); Declaration of Ryan Crosby, filed
Apr. 29, 2024 (Docket # 128) ("Crosby Decl."); Declaration of Greg Caglione, filed Apr. 29,
2024 (Docket # 129) ("Caglione Decl."); Declaration of Dayna Robin-Zegarelli, filed Apr. 29,

I. <u>BACKGROUND</u>

Icon filed this case on May 25, 2022, seeking to collect payment from Elevation for a shipment of iHealth COVID-19 test kits it had allegedly delivered. <u>See</u> Compl. On July 13, 2022, Elevation answered the complaint and brought a counterclaim against Icon and a third-party claim against Gypset. <u>See</u> Answer, Counterclaim and Third Party Complaint, filed July 13, 2022 (Docket # 11).

On December 5, 2022, the district court granted Elevation's motion to amend its answer, which resulted in Elevation filing the operative pleadings in this case: the Amended Counterclaim and the Amended Third-Party Complaint. <u>See</u> Order, filed Dec. 5, 2022 (Docket # 35). The amended pleadings brought several individuals, Robin-Zegarelli, Davis, Lee, Gonzalez, and Itum, into the action as third-party defendants. <u>See</u> Amended Counterclaim; Amended Third-Party Complaint. Because the instant motion relates to Elevations' efforts to obtain evidence to support its case, we summarize Elevation's allegations.

The allegations in the counterclaim give a history of the interaction between Elevation, through one of its members, Joseph Goldsmith, and various individuals who were either associated with Icon or Gypset. <u>See</u> Amended Counterclaim ¶¶ 16-98. Elevation alleges that there was an agreement between Icon and Gypset that "in exchange for money paid to Gypset via Zegarelli, Lee would cause ICON to deliver Test Kits (the 'Agreement')." <u>Id.</u> ¶ 39. Elevation

2024 (Docket # 130) ("Robin-Zegarelli Decl."); Declaration of Joey Davis, filed Apr. 29, 2024 (Docket # 131) ("Davis Decl."); Declaration of Scott T. Tross, Esq., filed Apr. 29, 2024 (Docket # 132) ("Tross Decl."); Letter, filed May 3, 2024 (Docket # 133) ("Gonzalez Opp."); Declaration of Siddartha Rao, filed May 6, 2024 (Docket # 134) ("Rao Decl."); Memorandum of Law in Opposition, filed May 6, 2024 (Docket # 135) ("Itum Opp."); Reply Memorandum of Law, filed May 13, 2024 (Docket # 136) ("Reply"); Declaration of Ran Mukherjee, filed May 13, 2024 (Docket # 137) ("Mukherjee Reply Decl.").

alleges that "Gonzales [sic], Itum, and Davis were part of the Agreement, and/or helped to broker it, and in any event expected to profit from it and did in fact profit from it."  Id. ¶ 40.

Elevation alleges that Lee directed Robin-Zegarelli to send a letter to Elevation representing that it had possession of test kits, even though Lee knew this to be false and knew that Icon and Gypset were not legally authorized to distribute the test kits.  Id. ¶ 43.  Elevation alleges that "[t]he Emergency Use Authorization ('EUA') granted by the U.S. Food and Drug Administration ('FDA') on December 22, 2021," permitted test kits "to be sold in interstate commerce in the United States" only by "authorized distributors."  Id. ¶ 88.

Elevation attaches a December 31, 2021 letter to the Amended Counterclaim that appears on Gypset letterhead.  See Letter, annexed as Ex. 1 to Amended Counterclaim (Docket # 38-1).  The letter states that Gypset understood all the "USG requirements" for distribution test kits (presumably referring to the United States government), would "meet and exceed" all such requirements, and was ready and able to fully deliver 1,504,200 iHealth test kits by January 5, 2022, if it received a "wire" payment of an unspecified amount.  Id.  This letter is alleged to have been sent pursuant to Gypset's "joint venture" with Icon.  Amended Counterclaim ¶ 44.  On December 31, 2021, in reliance on this and other communications, Elevation wired $2,640,000 to the account specified.  Id.  ¶¶ 49-51.

The invoice Elevation received represented that 400,000 test kits could be shipped within 24 hours of the receipt of the wire.  Id. ¶ 48.  Despite multiple promises of earlier shipments, including photographs of test kits that were allegedly being shipped, the test kits were not shipped until the second half of February 2022.  Id. ¶ 52-79, 87.  In the meantime, Elevation's multiple requests for refunds were ignored.  Id. ¶¶ 60, 64, 66, 68, 77.

Elevation alleges that the Icon Parties' assertions that they had possession of the test kits or that they were available for shipping were false because the Icon Parties did not have possession of the test kits and, because none of the parties were "authorized distributors," they were not legally authorized to sell or distribute the test kits.  Id. ¶¶ 80-83.  Elevation alleges that Icon's authorized distributor status was received at the earliest on or about February 1, 2022, and was revoked by iHealth in or around June 2022.  Id. ¶ 94.  It is alleged that Gypset was never an authorized distributor.  Id. ¶ 95.

Elevation also alleges that government regulations and "custom and practice in the industry" require that there be "proper documentation of the chain of custody" to ensure compliance with those regulations.  Id. ¶¶ 90-91.  But the test kits arrived "without the proper chain of custody documentation or lot numbers that should have demonstrated that the Test Kits were legitimate, and originated properly from iHealth, as opposed to being counterfeit Test Kits."  Id. ¶ 92.

Elevation never sold the test kits and Icon and Gypset have refused to take them back or refund Elevation's money.  Id. ¶¶ 97-98.

II.  PROGRESS OF DISCOVERY

The initial scheduling order in this case required that fact discovery be completed by January 13, 2023.  See Civil Case Management Plan and Scheduling Order, filed Sept. 20, 2022 (Docket # 18), at 2.  During the course of this case, the Icon Parties never served any discovery requests of their own.  See Icon Opp. at 10.  Elevation did so, however, and on October 24, 2022, Icon responded to Elevation's first set of document requests and interrogatories.  See Plaintiff's Responses and Objects to Defendant's First Set of Interrogatories, annexed as Ex. A to Mukherjee Decl. (Docket # 114-1); Counterclaim Defendants' Response and Objects to

Counterclaim Plaintiff's Request for Production of Documents, annexed as Ex. B to Mukherjee Decl. (Docket # 114-2). The documents produced by Icon did not include any communications within Icon or between Icon and any other party (other than Elevation itself), such as Gypset. See id.; Mem. at 3-4; see also id. at 5 (stating that in October 2023, Elevation had not received any documents "between the [Icon Parties] other than communications to which Elevation was a party and therefore possessed anyway").

After the new parties were brought into the case, Elevation served document requests and interrogatories on all the Icon Parties on February 21, 2023. See Elevation Health, LLC's First Set of Interrogatories, annexed as Ex. C to Mukherjee Decl. (Docket # 114-3); Elevation Health, LLC's First Request for Production, annexed as Ex. D to Mukherjee Decl. (Docket # 114-4). Elevation did not receive any responses to the February 21, 2023 requests by the deadline of March 23, 2023. See Mem. at 4. Over the course of the next several months, Elevation filed four letters to the district court describing the Icon Parties' failure to respond to the February 21, 2023 document requests and interrogatories. See Letter, filed Apr. 3, 2023 (Docket # 61); Letter, filed May 2, 2023 (Docket # 62); Letter, filed June 5, 2023 (Docket # 63); Letter, filed Aug. 3, 2023 (Docket # 64). The district court held a conference to discuss the status of the case on October 12, 2023, see Docket Entry dated Oct. 12, 2023, and issued an order extending the deadline to complete fact discovery to December 31, 2023, see Order, filed Oct. 12, 2023 (Docket # 69) ("10/12/23 Order"). The district court also ordered the Icon Parties to respond to Elevation's document requests and interrogatories by October 19, 2023. See id. In addition to setting these deadlines, the district court denied, without prejudice to renewal of the application after the close of discovery, Elevation's request to move for summary judgment based on the fact that the Icon Parties had not timely responded to Elevation's requests for admission, noting that

the Icon Parties represented to the district court that the delay was caused by a "law office

failure." Id. at 1-2. The district court also cautioned that "continued failure to conduct discovery

in good faith, to comply with their discovery obligations, or to follow any Order or Rule of this

Court may result in sanctions, including preclusion of claims or defenses, monetary penalties,

other sanctions on counsel, and/or dismissal." Id. at 2 (emphasis omitted).

On October 26, 2023, Elevation filed a letter to the district court indicating that it did not

receive the document production or interrogatory responses by the October 19, 2023 deadline,

and requested various sanctions related to the Icon Parties' failure. See Letter, filed Oct. 26,

2023 (Docket # 72). The Icon Parties' attorney, Bryan McKenna, responded, indicating that he

had mailed copies of the production to Elevation on October 19, 2023. See Letter, filed Oct. 30,

2023 (Docket # 73).[3] The production seems to have eventually been received by Elevation. See

Responses and Objections to Elevation Health, LLC's Interrogatories, annexed as Ex. E to

Mukherjee Decl. (Docket # 114-5); Responses to Elevation's Requests for Production, annexed

as Ex. F to Mukherjee Decl. (Docket # 114-6); Mukherjee Decl. ¶¶ 6-7. Shortly thereafter, the

parties filed a joint letter to the district court concerning what Elevation characterized as the Icon

Parties' "paltry 17-page document production." See Joint Letter, filed Nov. 10, 2023 (Docket

# 75), at 2-3. Elevation highlighted that the document production failed to include any

communication between any of the Icon Parties and iHealth, "even one communication of the

other parties with each other, [or] . . . even one internal communication from any of the entity

parties, Icon or Gypset." Id. In the portion of the letter written by McKenna, McKenna asserted

that the documents Elevation sought did not exist and that Elevation "has received all documents

---

[3] Elevation contends that this was a false statement and that the responses were
backdated. See Reply at 3 n.1.

that plaintiff and third-party defendants have delivered to counsel." Id. at 3.  In fact, the

production did not even include all communications between Icon and Elevation.  See Mem. at 7.

The case was referred to the undersigned, see Order of Reference to a Magistrate Judge,

filed Nov. 14, 2023 (Docket # 77), and the Court directed the parties to confer on the issue, see

Memorandum Endorsement, Nov. 14, 2023 (Docket # 78) ("11/14/23 Order").  Additionally, the

Court ordered McKenna to "describe the nature of [his] search" for responsive documents "in

writing" upon Elevation's request.  Id.  It appears that Icon and Gypset made additional

document productions in November and early December.  See Icon Opp. at 6;

November/December 2023 Production, annexed as Exs. 4-9 to Tross Decl. (Docket ## 132-4 to

132-17) ("November/December 2023 Production").

On December 5, 2023, Elevation filed a new letter asserting that the Icon Parties still had

not made an adequate production.  See Letter, filed Dec. 5, 2023 (Docket # 79).  Among other

things, Elevation stated that McKenna refused to describe his search for documents in writing

despite Elevation's request and this Court's order.  See id. at 7.  After initially failing to respond

to Elevation's letter, see Order, filed Dec. 8, 2023 (Docket # 80), the Icon Parties responded, see

Letter, filed Dec. 11, 2023 (Docket # 81), and the Court scheduled a conference to discuss the

dispute, see Order, filed Dec. 12, 2023 (Docket # 82).

The conference was held on December 15, 2023.  See Transcript, filed Jan. 18, 2024

(Docket # 92) ("Tr.").  The Court began by addressing McKenna's failure to provide the written

description of his search for responsive documents as the Court had ordered.  See Tr. 4:2-9.

While McKenna stated that he "did not see" that the Court had specifically ordered him to

provide a description of the search, Tr. 4:14-15, the Court admonished McKenna for this

assertion:

> And, you know, I don't put things in orders for no reason and to waste my time. I do it seriously, understanding that officers of the court will read those orders, take them seriously and obey them, particularly when they're reminded of their existence by opposing counsel, which is what happened here. So I really don't — I don't even understand why there shouldn't be a sanction just for that.

Tr. 5:5-13. The Court expressed incredulity at McKenna's characterization of his failure as "inadvertent" in light of the fact that Elevation's counsel had pointed out to McKenna beforehand that the Court had ordered McKenna to provide such a written description. See Tr. 6:17-25. The Court stated that it would later determine an appropriate sanction alongside other potential grounds for sanctions. See Tr. 7:6-12.

Turning to the substance of the dispute, the Court noted "plenty of failings" on the part of the Icon Parties, particularly on the part of Icon. Tr. 8:3-5. Elevation summarized its concern over the Icon Parties' search for responsive documents by highlighting that the only communications the Icon Parties had produced were communications in which Elevation was a party; in other words, there was "not a single internal communication among or between or within" the Icon Parties. Tr. 11:10-17. Elevation stated that it wanted to seek adverse inferences, and the Court indicated that it would decide the issue once a formal motion was filed. See Tr. 21:12-25. The Court also stated that preclusion of evidence not already produced was appropriate, ordered the Icon Parties to produce evidence it claimed to have already collected, and permitted Elevation to seek preclusion of this material in a future motion. See Tr. 28:7-12; 30:7-10. The Court permitted Elevation to take a deposition pursuant to Fed. R. Civ. P. 30(b)(6) to determine how the Icon Parties searched for responsive documents. See Tr. 39:25-40:3. Following the conference, the Court issued a written order that summarized the orders made at the conference. See Order, filed Dec. 18, 2023 (Docket # 91). The deposition was ordered to take place before January 31, 2024, and the Icon Parties were ordered to produce certain

information in response to Elevation's document requests and requests for admission by December 22, 2023.  See id. at 2.  Additional documents were produced following that order.  See November/December 2023 Production.  On February 12, 2024, the undersigned issued an order setting the briefing schedule for Elevation's motion for sanctions.  See Order, filed Feb. 12, 2024 (Docket # 102).

On February 15, 2024, after the January 31, 2024 deadline to conduct the Fed. R. Civ. P. 30(b)(6) deposition had passed, the Icon Parties sought an extension of the deadline to conduct the deposition.  See Letter, filed Feb. 15, 2024 (Docket # 103).  The Court denied the application without prejudice and ordered McKenna to file a new application with an accompanying sworn declaration or affidavit outlining "all efforts made since December 15, [2023]," the date the deposition was ordered, "by plaintiff's counsel and Icon International to comply with the Court's January 31, 2024 deadline for the Rule 30(b)(6) deposition."  Memorandum Endorsement, filed Feb. 16, 2024 (Docket # 104).  McKenna filed a declaration renewing his request to extend the court-ordered deadline.  See Declaration of Bryan A. McKenna, filed Feb. 19, 2024 (Docket # 105) ("McKenna Decl.").  In the declaration, McKenna stated that his primary contacts at Icon over the course of the litigation were Chief Financial Officer Clarence Lee — who McKenna stated had only "some involvement . . . in managing the litigation" — and Executive Vice President Greg Caglione — who was McKenna's "primary contact for the litigation."  McKenna Decl. ¶ 2.  As it related to the deposition, McKenna stated that Caglione directed him to Lee, indicating that "the deposition of another employee" should be "clear[ed]" by Lee, and that McKenna and Lee spoke on December 21, 2023, about the subject of the deposition.  Id. ¶¶ 3-4.  McKenna stated that he and Lee did not speak again until January 3, 2024, and that "[a]t that time Mr. Lee did not tell [McKenna] the name of the person with knowledge of the email system

or of searches made . . . ."  Id. ¶ 4.  McKenna and Lee spoke again on January 29, 2024, two days before the court-ordered deadline to conduct the deposition, and Lee identified Chief Information Officer Ryan Crosby as the deponent.  Id. ¶ 6.  The Court granted the application to extend the deadline for the deposition but noted that the Court "doubt[ed]" Icon had been diligent in complying with the Court's order given it took over a month for Icon to identify a Rule 30(b)(6) witness to speak on its search for responsive documents.  See Order, filed Feb. 20, 2024 (Docket # 108).

Elevation filed the instant motion on March 13, 2024.  See Mot.  After the Icon Parties failed to file a response by the court-ordered deadline, the Court issued an order stating it deemed Elevation's motion as unopposed.  See Order, filed Mar. 21, 2024 (Docket # 117).  On March 22, 2024, the Court received a letter by mail from McKenna stating that he had been disbarred.  See Letter, filed Mar. 22, 2024 (Docket # 118); see also Matter of McKenna, 205 N.Y.S.3d 400 (1st Dep't 2024) (per curiam).  On April 8, 2024, the Court held a status conference with all the parties in the case to determine whether the Icon Parties planned on obtaining new counsel and to determine the new briefing schedule for Elevation's motion for sanctions.  See Docket Entry dated Apr. 8, 2024.  Prior to the hearing, Gypset, Icon, Lee, Davis, and Robin-Zegarelli jointly obtained new counsel, see Notice of Appearance, filed Apr. 4, 2024 (Docket # 121), and Itum obtained separate counsel, see Notice of Appearance, filed Apr. 7, 2024 (Docket # 123).  Gonzalez indicated at the conference that he would proceed pro se. See Letter, filed May 3, 2024 (Docket # 133).  Each of the Icon Parties filed opposition to Elevation's motion.  See Icon Opp.; Gonzalez Opp.; Itum Opp.

In brief, the motion describes the course of discovery failures by the Icon Parties — mainly, the failures of Icon — and seeks various sanctions, including dismissal.  See generally

Mem. at 3-21.  The Icon Parties argue that they complied with the instructions of their attorney.
Nonetheless, the Icon Parties' filings make clear that Icon did not conduct a search of
communications with parties other than Elevation, such as a search of internal communications,
until February 2024.  See Icon. Opp. at 7; Crosby Decl. ¶ 7; Robin-Zegarelli Decl. ¶ 10; Davis
Decl. ¶ 8.

Elevation seeks sanctions under Fed. R. Civ. P. 16(f)(1)(C) and Fed. R. Civ. P.
37(b)(2)(A).  See Mem. at 16.[4]

III.  LEGAL STANDARD

A.  Rule 37

Rule 37 of the Federal Rules of Civil Procedure "governs the district court's procedures
for enforcing discovery orders and imposing sanctions for misconduct."  World Wide Polymers,
Inc. v. Shinkong Synthetic Fibers Corp., 694 F.3d 155, 158 (2d Cir. 2012); accord Marquez v.
Hoffman, 2022 WL 4076016, at *12 (S.D.N.Y. Sept. 6, 2022), adopted by 2023 WL 2088522
(S.D.N.Y. Feb. 17, 2023), reconsideration denied, 2024 WL 1056285 (S.D.N.Y. Mar. 4, 2024).
Rule 37(b)(2)(A) provides that "[i]f a party . . . fails to obey an order to provide or permit
discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is
pending may issue further just orders."  Rule 37(b)(2)(A) authorizes a range of sanctions,
including dismissal or default judgment, striking of pleadings, preclusion and mandatory adverse
inference instructions.  Fed. R. Civ. P. 37(b)(2)(A)(i)-(iii), (v), (vi).

_____

[4]  Elevation states at one point in its brief that it also seeks sanctions under "the Court's
inherent authority."  Mem. at 16.  Elevation makes no further reference to such authority either
in its main brief or its reply brief and thus we do not consider the law governing the Court's
inherent authority.

In <u>Agiwal v. Mid Island Mortg. Corp.</u>, 555 F.3d 298 (2d Cir. 2009), the Second Circuit directed courts to analyze four non-exhaustive factors when considering whether to impose sanctions under Rule 37: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of noncompliance." <u>Id.</u> at 302 (internal quotation marks, alteration, and citation omitted). The four <u>Agiwal</u> factors "are not exclusive, and they need not each be resolved against" a party to warrant sanctions. <u>S. New England Tel. Co. v. Glob. NAPs Inc.</u>, 624 F.3d 123, 144 (2d Cir. 2010).

When acting pursuant to Rule 37, "a district court has wide discretion in sanctioning a party for discovery abuses." <u>Reilly v. Natwest Mkts. Grp. Inc.</u>, 181 F.3d 253, 267 (2d Cir. 1999) (citing <u>New York State Nat. Org. for Women v. Terry</u>, 886 F.2d 1339, 1354 (2d Cir. 1989)). Although a harsh penalty, dismissal under Rule 37 is an appropriate sanction "where a party fails to comply with the court's discovery orders willfully, in bad faith, or through fault." <u>John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.</u>, 845 F.2d 1172, 1176 (2d Cir. 1988). Because "Rule 37 permits the imposition of 'just' sanctions[,] the severity of sanction must be commensurate with the non-compliance," <u>Shcherbakovskiy v. Da Capo Al Fine, Ltd.</u>, 490 F.3d 130, 140 (2d Cir. 2007), and should be guided by the purposes of sanctions: "(1) to ensure that a party will not benefit from its own failure to comply; (2) to obtain compliance with the particular order issued; and (3) to serve as a general deterrent effect on the case and on other litigants as well," <u>Erdman v. Victor</u>, 345 F.R.D. 60, 62 (S.D.N.Y. 2024) (citation and quotation marks omitted).

B.  Rule 16(f)

Fed. R. Civ. P. 16(f)(1) provides in relevant part that a court "may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order."  Fed. R. Civ. P. 16(f)(1)(C).  "It is well settled that in this court, the standards to be applied in imposing sanctions under Rule 16 are identical to the familiar standards contained in Rule 37."  Fonar Corp. v. Magnetic Plus, Inc., 175 F.R.D. 53, 55 (S.D.N.Y. 1997) (collecting cases); accord Martinez v. N.Y.C. Health & Hosps. Corp., 2017 WL 6729296, at *3 (S.D.N.Y. Dec. 28, 2017) ("In considering sanctions under Rule 16(f), courts have considered the factors applied in cases arising under Rule 37(b)."); Cohen v. U.S. Dep't of Just., 2017 WL 149987, at *2 (S.D.N.Y. Jan. 13, 2017); Vajic v. API Rest. Corp., 2014 WL 4384148, at *2 (S.D.N.Y. Sept. 4, 2014); Quiles v. Beth Israel Med. Ctr., 168 F.R.D. 15, 18 (S.D.N.Y. 1996).  The 1983 advisory committee notes explain that "Rule 16(f) incorporates portions of Rule 37(b)(2), which prescribes sanctions for failing to make discovery," and state that "[t]his should facilitate application of Rule 16(f), since courts and lawyers already are familiar with the Rule 37 standards."  Fed. R. Civ. P. 16 Advisory Committee's Note to 1983 Amendment.

Accordingly, courts apply the Agiwal factors when considering sanctions both pursuant to Rule 16 and Rule 37.  See Yourman v. Verizon Commc'ns-Telecommunications Corp., 2020 WL 6567041, at *2-3 (E.D.N.Y. Oct. 14, 2020), adopted, 2020 WL 6565198 (E.D.N.Y. Nov. 9, 2020); Kantor v. Air Atl. Med., P.C., 2020 WL 7130732, at *2 (E.D.N.Y. Sept. 23, 2020), adopted, 2020 WL 7123319 (E.D.N.Y. Dec. 4, 2020); Sanchez v. Jyp Foods Inc., 2018 WL 4502008, at *3 (S.D.N.Y. Sept. 20, 2018); S.E.C. v. Euro Sec. Fund, 2009 WL 2709316, at *3-5 (S.D.N.Y. Aug. 27, 2009).

IV.  <u>DISCUSSION</u>

Elevation requests that the Icon Parties' pleadings be struck.  <u>See</u> Mem. at 2-3.  Failing that, Elevation requests that specific adverse inferences be drawn, or in the alternative, that a finder of fact be permitted to draw such inferences from the Icon Parties' failure to engage in discovery.  <u>See</u> <u>id.</u>  Elevation also requests that the Icon Parties be precluded from relying on any documents that were not produced by the October 19, 2023 deadline set by Judge Vyskocil.  <u>See</u> <u>id.</u> at 3.  Finally, Elevation requests that it be awarded legal fees and costs associated with the "excessive expense of discovery disputes that have been necessitated by Plaintiff's misconduct." <u>See</u> <u>id.</u>

Before addressing Elevation's requests for sanctions, we first discuss whether Elevation is entitled to obtain sanctions against the parties as opposed to the parties' counsel.  In this motion, Elevation seeks sanctions exclusively against the Icon Parties, not McKenna himself. <u>See</u> Mot.

A.  <u>Allocation of Responsibility between McKenna and His Clients</u>

The Icon Parties' opposition centers on their contention that they did not intentionally fail to comply with any discovery obligations.  <u>See</u>, <u>e.g.</u>, Icon Opp. at 9 (noting lack of "willful conduct.").  They assert that they did everything that McKenna asked them to in responding to the discovery requests.  <u>Id.</u>; <u>see also</u> Gonzalez Opp. at 1 (noting that Gonzalez "trusted" McKenna's guidance); Icon Opp. at 9 ("McKenna's omissions . . . should not be held against his clients.").  Elevation by contrast, <u>see</u> Mem. at 15, invokes <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380 (1993), which held in the context of a missed deadline that clients may "be held accountable for the acts and omissions of their chosen counsel," <u>id.</u> at 397.

The Second Circuit has held, however, that "[t]he rule that the sins of the lawyer are

visited on the client does not apply in the context of sanctions." Gallop v. Cheney, 660 F.3d 580, 584 (2d Cir. 2011) (per curiam) (quoting In re Porto, 645 F.3d 1294, 1304 (11th Cir. 2011)), vacated in part on other grounds, 667 F.3d 226 (2d Cir. 2012); accord Chen v. Thai Greenleaf Rest. Corp., 2022 WL 18859066, at *6 (E.D.N.Y. Dec. 22, 2022), adopted by 2023 WL 2731712 (E.D.N.Y. Mar. 31, 2023). Thus, "[f]or purposes of determining whether to impose sanctions," a court "analyze[s] the conduct of parties and their attorneys separately." Ransmeier v. Mariani, 718 F.3d 64, 71 (2d Cir. 2013); accord Martinez, 2017 WL 6729296, at *4. However, this does not mean that a party will never "be held accountable for the acts and omissions of their chosen counsel." Pioneer Inv. Servs. Co., 507 U.S. at 397.

In a somewhat analogous context — dismissal of a case for failure to prosecute — the Second Circuit has outlined the principles relevant to determining whether a client should be held responsible for its attorney's misconduct. The Second Circuit stated in relevant part:

> In deciding on the suitability of lesser sanctions, and whether the sanctions should be aimed primarily against the party or the attorney, it can be important for the district court to assess the relative roles of attorney and client in causing the delay, as well as whether a tactical benefit was sought by the delay. In making this statement, we are cognizant of the fact that a client is ordinarily bound by the acts of his lawyer, and this — of course — extends to behavior that would justify a dismissal for failure to prosecute. [Link v. Wabash R. Co., 370 U.S. 626, 633-34 & n.10 (1962)]; cf. Pioneer Inv. Servs. v. Brunswick Assocs., 507 U.S. 380, 396-98, 113 S. Ct. 1489, 1499, 123 L. Ed.2d 74 (1993). Nothing we say today contradicts that basic principle. This principle, however, does not relieve the district court of the obligation to consider the relevant factors before dismissing an action — especially the suitability of lesser sanctions. When the district court considers the appropriate sanction for failure to prosecute an action, the more the delay was occasioned by plaintiff's personal obstruction, or was designed to benefit the plaintiff's strategic interests, the more suitable the remedy of dismissal. Conversely, the more the delay was occasioned by the lawyer's disregard of his obligation toward his client, the more this factor argues in favor of a less drastic sanction imposed directly on the lawyer.
>
> Numerous circuits, with the support of leading commentators, have indicated that, at least absent prejudice, dismissal for failure to prosecute is inappropriate where the fault clearly lay in the lawyer's failure to attend to his client's business, and

> the court failed to consider alternative sanctions. . . .  We have long-suggested imposing sanctions directly on dilatory lawyers in appropriate cases, and we continue to commend to our district judges this "sound practice."  [Ball v. City of Chicago, 2 F.3d 752, 758 (7th Cir. 1993)]. . . .
>
> Of course, other factors may also be relevant, including those set forth in [Alvarez v. Simmons Mkt. Research Bureau, Inc., 839 F.2d 930, 932 (2d Cir. 1988)].  In particular, where opposing parties are found to have been meaningfully prejudiced by a plaintiff's delay, this factor speaks strongly in favor of dismissal, and may well override the hardship to plaintiff.  See [Shea v. Donohoe Const. Co., 795 F.2d 1071, 1074-75 (D.C. Cir. 1986)].

Dodson v. Runyon, 86 F.3d 37, 40-41 (2d Cir. 1996) (footnotes omitted); accord World Wide Polymers, Inc., 694 F.3d at 159.  Thus, "where an attorney has been at fault, courts have recognized that it would often be unfair to penalize the client for his counsel's neglect."  Perry v. Guerrieri, 2020 WL 8855260, at *3 (W.D.N.Y. Aug. 27, 2020) (collecting cases).

While Dodson was addressing a dismissal for failure to prosecute, its instructions on how to consider the roles of client and attorney have been applied in the context of discovery sanctions under Rule 37.  See, e.g., Ambrose v. City of White Plains, 2016 WL 11484441, at *10 n.7 (S.D.N.Y. Oct. 13, 2016) ("Although Dodson involved a motion to dismiss for failure to prosecute under Fed. R. Civ. P. 41(b), 'the pertinent criteria for [a Rule 41(b) dismissal] largely parallel those applicable to the Rule 37 analysis.'") (quoting Dauphin v. Chestnut Ridge Transp. Inc., 2009 WL 5103286, at *2 (S.D.N.Y. Dec. 28, 2009)), adopted by 2016 WL 6882863 (S.D.N.Y. Nov. 22, 2016); accord World Wide Polymers, Inc., 694 F.3d at 159; Martinez, 2017 WL 6729296, at *4; E.L.A. v. Abbott House, Inc., 2020 WL 5682019, at *2 (S.D.N.Y. Sept. 24, 2020).

In sum, we reject any argument that this Court should apply a per se rule that a party must fully bear responsibility for the acts of its attorney regardless of the circumstances.

We next address the four Agiwal factors.  As most courts have done, we consider the

distinction between the conduct of the attorney and his clients for purposes of assaying which level of sanctions is appropriate (i.e., the fourth Agiwal factor).

    B.  Analysis of the Factors Governing Sanctions

        1.  Willfulness and Reason for Noncompliance

As measured by the conduct of their attorney, the Icon Parties' noncompliance with court orders in this action was plainly willful. For example, McKenna disregarded a direct order of this Court by failing to supply Elevation with a written description of his search for responsive documents. See 11/14/23 Order. When asked how this failure could possibly be "inadvertent" in light of opposing counsel previously directing McKenna to the unambiguous language in the order, McKenna failed to provide any justification. See Tr. 6:2-16. In another instance, McKenna failed to schedule the Rule 30(b)(6) deposition that the Court had ordered for a period of at least two months. See Order, filed Feb. 20, 2024 (Docket # 108); Memorandum Endorsement, filed Dec. 18, 2023 (Docket # 91). McKenna also failed to respond to a letter from Elevation regarding discovery as required by this Court's and the district court's Individual Practices. See, e.g., Order, filed Dec. 8, 2023 (Docket # 80) (failing to respond to opposing party letter in contravention of this Court's Individual Practices); see also Memorandum Endorsement, filed Dec. 12, 2024 (Docket # 85) (denying application for failing to abide by the Court's Individual Practices pertaining to seeking an adjournment). McKenna also failed to properly respond to Elevation's interrogatories as ordered. During the December 15, 2023 conference, the Court admonished McKenna for raising a frivolous objection — related to the number of interrogatories a party can serve on an individual — and noted that the objection and the failure to respond to the interrogatories was a violation of the district court's October 12, 2023 order. See Tr. 46:13-15; see also 10/12/23 Order (directing the Icon Parties to respond to Elevation's

interrogatories and document requests by October 19, 2023).

Equally showing willfulness on McKenna's part was his failure to provide discovery as required by the Federal Rules of Civil Procedure and court order.  McKenna failed to meaningfully respond to Elevation's February 2023 requests for production and interrogatories until he was ordered to do so on October 12, 2023.  See 10/12/23 Order.  That order required the Icon Parties to produce responses to Elevation's requests by October 19, 2023.  See id.  As was later revealed on February 29, 2024, Icon's Chief Information Officer Ryan Crosby, the individual Icon designated as a Rule 30(b)(6) witness with knowledge of Icon's search, was unaware of any effort to undertake a serious collection of documents until at least February 2024.  See Deposition of Ryan Crosby, annexed as Ex. K to Mukherjee Decl. (Docket # 114-11) ("Crosby Dep."), at 34:4-36:11.  Indeed, Crosby testified that he was not aware that the instant action "would require production of certain e-mails and other communications of Icon" until February 10, 2024.  Crosby Dep. at 19:13-18; see Crosby Dep. at 16:13-21 (testifying that he became knowledgeable of the "steps to pull documents for . . . the first document production" when he "was asked to do a deposition the week of February 10th").

Willfulness is typically inferred from the violation of multiple court orders.  See, e.g., Marquez, 2022 WL 4076016, at *18 ("[A] 'persistent refusal to comply with' discovery orders is by itself 'sufficient evidence of willfulness [and] bad faith.'") (quoting Masi v. Steely, 242 F.R.D. 278, 285 (S.D.N.Y. 2007)); Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp., 2017 WL 2840279, at *12 (S.D.N.Y. June 27, 2017) ("Willful non-compliance is routinely found, for instance, where a party has repeatedly failed to . . . produce documents . . . in violation of the district court's orders.") (quoting Farmer v. Hyde Your Eyes Optical, Inc., 2015 WL 2250592, at *7 (S.D.N.Y. May 13, 2015)); accord Grammar v. Sharinn & Lipshie, P.C., 2016 WL 525478, at

*3 (S.D.N.Y. Feb. 8, 2016). The Court finds that McKenna's disregard of multiple court orders, most significantly the district court's October 12, 2023 order directing document production and interrogatory responses, was willful.

The Icon Parties argue that this factor was not met because they were unaware of their discovery obligations and therefore did not act willfully. See Icon Opp. at 9-10. As Dodson itself suggested, however, considering the "relative roles" of attorney and client is relevant only when considering the "suitability of lesser sanctions" factor rather than at every factor of the analysis. See Dodson, 86 F.3d at 40 (requiring courts to consider the relative roles of the attorney in client "[i]n deciding on the suitability of lesser sanctions . . ."). Consistent with this approach, case law typically considers the relative roles of attorney and client in fashioning appropriate sanctions rather than determining whether each of the Agiwal factors themselves are met. See, e.g., Mitchell v. Lyons Pro. Servs., Inc., 708 F.3d 463, 468-69 (2d Cir. 2013) (vacating district court sanction of dismissal under inherent power of the court on the basis that the court did not consider "whether the delays leading to dismissal were solely a result of [counsel]'s actions and not those of his clients" in analyzing "the adequacy of lesser sanctions"); Kizer v. Abercrombie & Fitch Co., 2016 WL 11480709, at *8 (E.D.N.Y. Aug. 5, 2016) (analyzing the relative roles of the attorney and client in the context of the "efficacy of lesser sanctions" factor), adopted by 2016 WL 5338537 (E.D.N.Y. Sept. 23, 2016); Ying Kuang v. Genzyme Genetics Corp., 2012 WL 13059497, at *10 (S.D.N.Y. Nov. 28, 2012) (analyzing the relative roles of the attorney and client independent of the other Agiwal factors); Time Warner Cable of New York City, a Div. of Time Warner Ent. Co. L.P. v. Caro, 1999 WL 221649, at *2 (E.D.N.Y. Apr. 9, 1999) ("Because the Court believes it to be unfair to severely penalize the client for choosing a poorly organized legal counsel," the "efficacy of lesser sanctions" "factor weighs against

dismissal."). Furthermore, the Second Circuit has acknowledged that an attorney's misconduct by itself may be grounds for a sanction against the party where it "involve[s] an attempt to place the other side at an unfair disadvantage . . . ." World Wide Polymers, Inc., 694 F.3d at 160.

Accordingly, we find that the willfulness factor weighs in favor of imposing sanctions on Icon.[5]

### 2. Duration of the Period of Noncompliance

Icon's noncompliance began after it failed to respond to Elevation's February 2023 document requests and interrogatories — that is, March 23, 2023, given the requests were served on February 21, 2023. See Mem. at 4. Since the motion before us arises under the portions of Rules 16 and 37 relating to court orders, see Fed. R. Civ. P. 16(f)(1)(C), 37(b)(2)(A), we trace the first instance of noncompliance to Icon's failure to obey the district court's order that it respond to Elevation's requests by October 19, 2023, see 10/12/23 Order. The deposition of Crosby — which showed that Crosby was unaware at that time of any search by anyone at Icon for documents responsive to the vast majority of Elevation's requests, see Crosby Dep. at 34-36 — shows that noncompliance with this order continued until at least February 29, 2024, id.; see also Crosby Decl. ¶ 7 (Icon's new counsel requested additional searches to be run related to

---

[5] While Elevation's notice of motion seeks sanctions against all of the Icon Parties, Elevation's arguments relate almost entirely to production deficiencies on the part of Icon itself, not the other Icon parties. Indeed, outside of referencing several individuals at Icon — Lee, Caglione, Crosby — Elevation does not explain the basis for its request for sanctions against the other parties — that is, Gypset, Gonzalez, Itum, and Robin-Zegarelli — seemingly including them merely due to the fact that they were represented by the same counsel. In other words, Elevation fails to point to any conduct by these parties that deprived them of discovery, notwithstanding the failings of their counsel. Imposing sanctions in such a situation runs contrary to the Second Circuit's instruction to consider the "relative roles of attorney and client in causing the delay." Dodson, 86 F.3d at 40. Thus, Elevation's failure to point to any conduct or discovery deficiency on the part of Gypset, Gonzalez, Itum, and Robin-Zegarelli makes sanctions directed at those parties inappropriate.

communications among the Icon Parties).  Thus, at a minimum, Icon's noncompliance continued for approximately four months.  Courts have found that noncompliance for a period of such a length warrants the harshest of sanctions, including dismissal or default.  See Embuscado v. DC Comics, 347 F. App'x 700, 701 (2d Cir. 2009) (affirming Rule 37 dismissal where the plaintiff violated discovery orders over a three-month period); Shukla v. Deloitte Consulting LLP, 2021 WL 3159759, at *5 (S.D.N.Y. July 23, 2021) (dismissal with prejudice where plaintiff had not complied with discovery orders for three months), adopted by 2021 WL 3721349 (S.D.N.Y. Aug. 20, 2021).  Accordingly, the prolonged period of noncompliance favors the imposition of significant sanctions.

The only opposition provided by Icon is that they "at all times complied with various requests for discovery made by their counsel."  Icon Opp. at 11.  We discuss this argument in our analysis of the fourth Agiwal factor.

### 3.    Whether the Non-Compliant Party Had Been Warned of the Consequences of Noncompliance

As for whether Icon received adequate warning of the consequences of noncompliance, this Court's and the district court's numerous orders gave ample notice to anyone who read them of the consequences of noncompliance.  The district court's October 12, 2023 order itself emphasized that "continued failure to conduct discovery in good faith, to comply with their discovery obligations, or to follow any Order or Rule of this Court may result in sanctions, including preclusion of claims or defenses, monetary penalties, other sanctions on counsel, and/or dismissal."  See 10/12/23 Order at 2 (emphasis omitted).  After the Icon Parties' limited production, the district court twice warned of potential sanctions for discovery violations, including dismissal.  See Order, filed Oct. 31, 2023 (Docket # 74); Order, filed Nov. 14, 2023 (Docket # 76).  At the conference before the undersigned, the Court made clear that at least some

sanctions were already justified given McKenna's blatant disregard of this Court's order instructing him to provide a written description of the search for responsive documents if requested by Elevation's counsel.  See Tr. 5:5-13; see also 11/14/23 Order (directing McKenna to "describe the nature of the search in writing" if requested).  The Court also warned of the consequence of failing to produce discovery.  See Order, filed Dec. 18, 2023 (Docket # 91) (reserving judgment "at this time on the issue of sanctions for the failure of ICON and the Third-Party Defendants to engage in discovery, including but not limited to counsel's refusal to describe in writing the steps taken to search for and produce documents").

As with the previous factors, Icon does not contest that McKenna was aware of the many court orders reflecting the possibility of sanctions but asserts that Icon itself was not.  See Icon Opp. at 11.  We discuss this argument in the context of the last Agiwal factor.  Thus, this factor favors the imposition of sanctions.

### 4.  Efficacy of Lesser Sanctions

Elevation seeks four different types of sanctions pursuant to Fed. R. Civ. P. 16(f) and 37: (1) the striking of the Icon Parties' pleadings; (2) adverse inferences;[6] (3) preclusion; and (4) attorney's fees.  See Mem. at 2-3.  "[A] court should always seek to impose the least harsh

---

[6]  We address herein only the request for an adverse inference instruction as a sanction. Nothing herein prevents Elevation from seeking a permissive adverse inference instruction based on any claims of loss of evidence or a failure to produce evidence for which evidence is permitted to be presented at trial.  As the Second Circuit has made clear, a permissive adverse inference instruction does not necessarily reflect a sanction, and its delivery to a jury does not require the same findings necessary to impose a spoliation sanction.  See Mali v. Fed. Ins. Co., 720 F.3d 387, 391-94 (2d Cir. 2013); Klipsch Grp., Inc. v. Big Box Store Ltd., 2014 WL 904595, at *4 (S.D.N.Y. Mar. 4, 2014).  Additionally, the decision whether to grant a permissive adverse inference instruction "will necessarily be informed by factors and evidentiary support different from what is necessary to obtain a spoliation sanction."  Singh v. Penske Truck Leasing Co., L.P., 2015 WL 802994, at * 7 (S.D.N.Y. Feb. 26, 2015).  Such an instruction may be requested at the time pretrial order materials are submitted to the Court.

sanction that will remedy the discovery violation and deter such conduct in the future." Farmer v. Hyde Your Eyes Optical, Inc., 2015 WL 2250592, at *8 (S.D.N.Y. May 13, 2015) (citation and quotation marks omitted). While "deliberate and persistent noncompliance render[s] lesser sanctions inappropriate," Embuscado, 347 F. App'x at 701, the Court must also consider "the relative roles of attorney and client in causing the delay, as well as whether a tactical benefit was sought by the [misconduct]," World Wide Polymers, Inc., 694 F.3d at 159 (citation and internal quotation marks omitted) (alterations in original). In the context of delay, the Second Circuit has held that "the more the delay was occasioned by plaintiff's personal obstruction, or was designed to benefit the plaintiff's strategic interests, the more suitable the remedy of dismissal." Dodson, 86 F.3d at 40; see Wade v. Nassau Cnty., 674 F. App'x 96, 97 (2d Cir. 2017).

We begin by discussing the question of Icon's conduct independent of McKenna and then analyze whether their conduct suggests that there should be lesser or no sanctions against them.

### i. Icon's Conduct

Icon claims to have had no knowledge of McKenna's misconduct over the entire period of discovery until McKenna's withdrawal from the case. See Icon Opp. at 9; Gonzalez Opp. Icon has submitted several declarations in support of this contention, broadly stating that they "complied with all requests from McKenna." Icon Opp. at 9; see Lee Decl.; Crosby Decl.; Caglione Decl. Frustratingly, very little detail is given in these declarations as to the declarants' interactions with McKenna — most obviously, the declarations lack any detail as to what discussions took place with McKenna about document requests, when those discussions took place, what exactly McKenna instructed them to search for, and what inquiries they made of McKenna as to their obligations. In other words, we are left unable to analyze "the reason for noncompliance," given that Icon merely provides unsubstantiated assertions that it complied with

23

unspecified requests from their counsel.  See Agiwal, 555 F.3d at 302.

As the Second Circuit has stated, "[i]n general, the law places the burden of proof on the party that asserts a contention and seeks to benefit from it."  Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 196 F.3d 409, 428 (2d Cir. 1999).  Thus, because the information about what actually was said between Icon and McKenna is exclusively within Icon's knowledge, Icon must bear the burden of persuading the Court that it should not be responsible for the failure to comply with court orders regarding discovery.  See Shipstad v. One Way or Another Prods., LLC, 2017 WL 2462657, at *3 (S.D.N.Y. June 6, 2017) ("[W]here the attorney's conduct has been found to be willful, the willfulness will be imputed to the party himself where [the party] makes no showing that he has made any attempt to monitor counsel's handling of the lawsuit.").  As discussed above, Icon's declarations are vague and they fail to illuminate exactly what Icon actually knew (or did not know) about its obligation to conduct searches for documents or to ensure that any court orders regarding discovery were complied with.  The bare-boned assertion that Icon followed its attorney's instructions is insufficient to rebut the evidence in the record suggesting that Icon, as well as Lee and Caglione as employees of Icon, either knew about the discovery failures or should have known.[7]

It appears there were two individuals at Icon responsible for providing information to McKenna over the course of the litigation.  The first individual was Lee, the "Executive Vice

---

[7] Elevation asserts for the first time in its reply brief that Icon has "an executive team that includes a General Counsel," see Reply at 5, suggesting that there was a professional within Icon who could have ably monitored the litigation.  The only citation for this proposition, however, is a current website that does not give the dates of the General Counsel's employment and thus there is no admissible evidence marshalled by Elevation in its briefs reflecting that Icon had a general counsel during the time of the discovery failures.  Nonetheless, the Court finds it odd that the sworn statements from the various Icon declarants do not assert that Icon did not have an in-house attorney.

President, Chief Financial Officer and 50% owner of Icon," Lee Decl. ¶ 1, who, according to an earlier declaration submitted by McKenna, "had some involvement in the underlying matter and in managing the litigation," McKenna Decl. ¶ 2. The second person was Greg Caglione, an Executive Vice President at Icon and the person primarily responsible for the transaction with Elevation at issue in this case. See Caglione Decl. ¶¶ 1-2.

Regarding Lee, there is no clear evidence about what he knew before November 16, 2023, which was the date of his deposition. See Deposition of Clarence V. Lee, III, annexed as Ex. H to Mukherjee Decl. (Docket # 114-8) ("Lee Dep."). However, at the deposition, he testified that he had seen Elevation's document requests, though he does not state when he first saw them. See Lee Dep. at 20:17-20. Lee stated in his declaration provided in connection with the instant motion that he "did not personally search for all of the documents requested. Rather, [he] relied on Greg Caglione and Icon's IT Department to gather whatever information was required." Lee Decl. ¶ 3.

Lee's blind reliance on the IT department suggests at least some fault on the part of Icon. In his November 16, 2023 deposition, Lee testified under oath that Icon's IT department ran search terms to locate responsive documents. See Lee Dep. at 20:24-21:2. Lee did not know who in the IT department conducted the search for documents but relied on the fact that demands for document production in the context of a litigation typically went to the IT department. See Lee Dep. at 21:19-22:3. As would later be revealed, however, Icon's IT department was unaware of its need to search for the full range of responsive documents (other than documents exchanged with Elevation) until February 2024. Ryan Crosby, Icon's Chief Information Officer and the individual Icon designated as its Fed. R. Civ. P. 30(b)(6) witness to discuss its search for responsive documents, testified at a deposition held on February 29, 2024, that he was not aware

of the requirement to produce "certain e-mails and other communications of Icon" until the week

of February 10, 2024, and that he had not even seen the document requests that were served on

Icon as of the time of his deposition.  See Crosby Dep. at 19:10-22.  In other words, despite the

fact that Lee was "made aware" that Icon was responsible for producing some documents, see

Lee Decl. ¶ 3, and was shown the document demands, see Lee Dep. at 20:17-20, the department

he "relied on" and the one normally responsible for searching for documents, see Lee Dep. at

20:24-23:3, had no awareness of Icon's responsibilities until February 2024, nearly four and a

half months after the district court ordered responses to Elevation's requests.  Lee had also

testified under oath at this deposition that the IT department actually "appl[ied]. . . search terms

to locate responsive documents."  Lee Dep. at 20:24-21:3.  In fact, there is no evidence that any

such running of appropriate search terms on the relevant custodians' documents occurred as of

the date of Lee's deposition.  These facts demonstrate a serious failure on Lee's part to ensure

that the document requests were complied with.

     Additionally, at the end of Lee's November 2023 deposition, Elevation's counsel stated

in Lee's presence:

> I'm done with questions for today.  I just want to object on the record to the
> failure and refusal to produce documents, including but not limited to,
> communications between Icon and any of the third-party defendants, that do not
> include Elevation Health, communication between Icon and iHealth, the
> documentation showing when Icon purchased test kits from iHealth, the
> documents relating to the revocation of Icon's authorized distributors status, the
> complete chain of custody documentation and a number of other categories of
> documents that must exist, but have not been produced. I reserve the right to
> continue the deposition in light of future disclosures.

Lee Dep. at 76:18-77:12.  McKenna responded that he would "continue to talk to [his] client and

confirm that they've searched every place that needs to be searched for this document."  Lee

Dep. at 77:18-22.  There is no indication that Lee, following suggestions that Icon's production

was deficient, took any action, or instructed McKenna to take any action, to determine the

validity of Elevation's counsel's concerns or remedy the situation.  Indeed, Icon's IT department

was not instructed to search for the full range of relevant documents until February 2024,

approximately three months after this deposition.  See Crosby Dep. at 19:13-18; Icon Opp. at 7

("As explained by Crosby during his deposition, Icon's IT group had not previously been

requested to perform electronic searches across the Icon server for documents responsive to

Elevation Health's

discovery demands.") (internal citation omitted).

Lee's declaration suggests that he relied entirely on Caglione to manage the litigation.

See Lee Decl. ¶ 3.  Caglione states in his declaration that he was asked by McKenna, at some

unknown point in time, "to provide certain documentation relating to" the transaction at issue,

and that Caglione "spent hours searching computer and other files for responsive documents."

Id. ¶¶ 5-6.  Caglione provides no information on what documents McKenna requested and does

not state whether he knew of the production deficiencies in this case.  Despite Caglione's

somewhat vague reference to his interactions with McKenna, McKenna indicated in an earlier

declaration that "[t]hroughout this action, Mr. Caglione and I have had numerous discussions

about whether all of Icon's emails had been disclosed."  McKenna Decl. ¶ 3.  McKenna indicates

in the same declaration that on December 15 or 16, 2023, McKenna "advised [Caglione] that a

conference was held at which [Elevation] questioned whether Icon had disclosed all emails

relating to the case and that the Court suggested" a deposition on the topic.  Id.  In the absence of

any contradictory evidence marshalled by Icon, we accept these dates as correct.  What this

means is that despite becoming aware of the potential deficiencies in document production, there

is no evidence that Caglione took appropriate steps in December 2023 to respond to the

document requests.[8]

The conduct outlined above shows an utter lack of diligence on Icon's part to ensure it was complying with its discovery obligations.  "[W]here the attorney's conduct has been found to be willful, the willfulness will be imputed to the party himself where he makes no showing that he has made any attempt to monitor counsel's handling of the lawsuit."  Shipstad, 2017 WL 2462657, at *3 (quoting S.E.C. v. McNulty, 137 F.3d 732, 740 (2d Cir. 1998)); see Aristidou v. Aviation Port Servs., LLC, 2020 WL 10317398, at *13 (E.D.N.Y. Feb. 21, 2020) ("a complete failure to perform a straightforward and required inquiry" once document requests are served is "patently unreasonable and could only result from an intentional failure to act"), adopted by 2021 WL 2471269 (E.D.N.Y. June 17, 2021); see generally Thorpe v. Luisi, 2005 WL 1863671, at *3 (S.D.N.Y. Aug. 4, 2005) ("[E]ven the gross negligence of an attorney will be imputed to his clients barring evidence of 'diligent efforts by [the clients] to induce him to fulfill his duty.'") (quoting Dominguez v. United States, 583 F.2d 615, 618 (2d Cir. 1978)); S.E.C. v. McNulty, 1996 WL 422259, at *4 (S.D.N.Y. July 29, 1996) (imputing attorney conduct to client where client failed to show any "diligent efforts" to induce the attorney to fulfill their obligations), aff'd, 137 F.3d 732 (2d Cir. 1998); Canini v. U.S. Dep't of Just. Fed. Bureau of Prisons, 2008 WL 818696, at *6 (S.D.N.Y. Mar. 26, 2008) (imputing attorney conduct onto client where party "did not endeavor to contact counsel" and party did not provide evidence "that counsel made false assurances regarding the status of the lawsuit").

---

[8]  There is some suggestion in Caglione's deposition that he searched for documents shortly before his December 21, 2023 deposition.  See Deposition of Greg Caglione, annexed as Ex. 12 to Tross Decl. (Docket ## 132-23 and 132-24), at 48-49.  It is possible that this search resulted in the December 2023 productions made by Icon.  See November/December 2023 Production.  However, the Court is not provided with any information on this search, and it is clear from Icon's February 2024 production that the search resulting in the December 2023 production was insufficient.

ii.  <u>Analysis</u>

In light of the above, the Court finds that sanctions may properly be placed on Icon rather than just on McKenna given that Icon either has some culpability in failing to respond to the document requests or, at a minimum, failed to show either that they appropriately responded to the requests McKenna transmitted to them or that they appropriately monitored McKenna's conduct.  <u>See</u> <u>Shipstad</u>, 2017 WL 2462657, at *3.  The instant case is thus distinguishable from one of the few cases cited by Icon where "there [was] no evidence that the client [was] aware of the problem[s]" in the case.  <u>See</u> <u>Hollingsworth v. City of New York</u>, 1997 WL 91286, at *3 (S.D.N.Y. Mar. 4, 1997) ("It would be inappropriate to punish the client for the conduct of her attorney, particularly when there is no evidence that the client is aware of the problem.").  Moreover, the Second Circuit has acknowledged that a sanction for an "attorney's misconduct or failing" is properly placed on a party where the misconduct was designed "to place the other side at an unfair disadvantage."  <u>World Wide Polymers, Inc.,</u> 694 F.3d at 160; <u>see</u> <u>Dodson</u>, 86 F.3d at 40 (deeming it "important" for the district court to assess "whether a tactical benefit was sought by the delay").  Case law reflects that a failure to respond to discovery requests can be seen as an attempt to gain a tactical advantage.  <u>See</u> <u>Ying Kuang v. Genzyme Genetics Corp.</u>, 2012 WL 13059497, at *10 (S.D.N.Y. Nov. 28, 2012) (party sought a tactical benefit by failing to allow adversary to depose her); <u>Lava Trading, Inc., Hartford Fire Ins. Co.</u>, 2005 WL 459267, at *15 (S.D.N.Y. Feb. 24, 2005) (tactical benefit sought even where party eventually produced the discovery).  Here, Icon failed for months to produce documents highly relevant to its case, including documents that were harmful to its case. For example, a July 2022 communications with iHealth, in which iHealth accused Icon of selling counterfeit test kits, <u>see</u> Email, annexed as Ex. 16 to Tross Decl. (Docket # 132-28), directly supports allegations in Elevation's

counterclaims, see Amended Counterclaim ¶ 94.

That being said, the Icon Parties are already being punished to some degree for the failings of their attorney inasmuch as their attorney never sought discovery from Elevation — either by way of depositions or document requests — and the time to do so has now expired.  See Icon Opp. at 10.  This represents a severe disadvantage to the Icon Parties and a huge advantage to Elevation, which did not have to expend fees responding to requests or make its personnel available for deposition.  We thus consider this circumstance in our analysis of the appropriate sanction.

We next address each of the requested sanctions.

### A.  Striking of Pleadings

Fed. R. Civ. P. 37(b)(2)(A)(iii) permits a court to strike a party's "pleadings in whole or in part" as a discovery sanction.  In the instant case, the striking of the Icon Parties' pleadings would result in a dismissal of its case and lead to an entry of default against the third-party defendants.  As already noted, a Rule 37 sanction "must be commensurate with the non-compliance," Shcherbakovskiy, 490 F.3d at 140, and must be guided by the purposes of sanctions: "(1) to ensure that a party will not benefit from its own failure to comply; (2) to obtain compliance with the particular order issued; and (3) to serve as a general deterrent effect on the case and on other litigants as well," Erdman, 345 F.R.D. at 62 (citation and quotation marks omitted).

Thus, "[w]hile district courts generally have broad discretion with respect to the imposition of sanctions," the Second Circuit has "recognized that dismissal with prejudice is a harsh remedy to be used only in extreme situations, and then only when a court finds willfulness, bad faith, or any fault by the non-compliant litigant."  Koehl v. Bernstein, 740 F. 3d 860, 862 (2d

Cir. 2014) (citation and internal quotation marks omitted); see National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 643 (1976) (per curiam) (noting that dismissal under Rule 37 is justified where there is "flagrant bad faith" and counsel displayed "'callous disregard' of their responsibilities"); accord Salahuddin v. Harris, 782 F.2d 1127, 1132 (2d Cir. 1986). That principle is consistent with the Second Circuit's "strong preference for resolving disputes on the merits" rather than by default.  New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005).  In addition to considering the conduct of the non-compliant party, a court may also consider what prejudice the movant has suffered, although the Second Circuit has "consistently rejected the 'no harm, no foul' standard for evaluating discovery sanctions."  S. New England Tel. Co., 624 F.3d at 148; see id. at 148-149.

        While the record adequately establishes at least some fault on part of Icon, the Court finds that such a harsh sanction is inappropriate for three reasons.  First, the degree of Icon's fault (in contrast with McKenna's fault) cannot be said to rise to the level of bad faith or willfulness as to justify a terminating sanction.  Second, although Elevation is "'not required to show prejudice resulting from the [opposing party's] misconduct' in order to justify a severe sanction," Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers Union Loc. 361 v. McNulty, 2023 WL 5747345, at *8 (S.D.N.Y. Sept. 6, 2023) (quoting Sentry Ins. a Mut. Co. v. Weber, 720 F. App'x 639, 640 (2d Cir. 2017)), whether prejudice has resulted may be considered, see Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n, 319 F.R.D. 122, 129-31 (S.D.N.Y. 2016).  Elevation has not made a compelling argument for why it has suffered significant prejudice.  Certainly, we are sympathetic to the fact that the Icon Parties have delayed the resolution of Elevation's claims.  But Elevation has not provided any "reason to believe that any documents or witness testimony have been lost or made unavailable because of the delay."

Martinez, 2017 WL 6729296, at *5.[9]  Thus, outside of the delay itself, the Court cannot find

meaningful prejudice.  Finally, and most importantly, Elevation does not contest Icon's assertion

that the recent production fulfills Icon's discovery obligations.  See Icon Opp. at 12 ("To the

extent that a more fulsome production was required, it has now been made.").  The fact that

discovery may be completed, coupled with the "strong preference for resolving disputes on the

merits," New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005) (citation and quotation marks

omitted), compels the conclusion that the Court should not issue a terminating sanction such as

dismissal, see Barney v. Consol. Edison Co. of N.Y., 2007 WL 952035, at *5 (E.D.N.Y. Mar. 28,

2007) ("[I]t appears that the delays were caused principally, if not solely, by plaintiff's attorney

and prejudice to the defendant can be alleviated by the imposition of lesser sanctions."); Daniels

v. Loizzo, 175 F.R.D. 459, 462 (S.D.N.Y. 1996) (declining to dismiss plaintiff's case in part

because "Defendants have alleged no prejudice resulting from the delay . . . . [and because] the

delay appears to have ended with Plaintiff's retention of new counsel militates against

dismissal").

 Accordingly, Elevation's request to strike the Icon Parties' pleadings is denied.

## B.  Adverse Inferences

 Elevation seeks 12 adverse inferences as sanctions for the Icon Parties' failures during

discovery.  See Mem. at 19-20.

 "Although adverse inference instructions 'usually [are] employed in cases involving

spoliation of evidence,' a court also may grant an adverse inference instruction for the non-

---

 [9]  Elevation briefly mentions the possibility that certain documentary evidence, including emails, may have been permanently deleted.  See Mem. at 11.  However, Elevation does not respond to the Icon Parties' thorough explanation that Elevation's belief is based on an incorrect reading of Crosby's deposition.  See Itum Opp; Icon Opp. at 14-15; Crosby Decl. ¶ 8.

production of evidence." Hawley v. Mphasis Corp., 302 F.R.D. 37, 54 (S.D.N.Y. 2014) (quoting

Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002)).  "A court

may grant an adverse inference instruction for the non-production of evidence upon a showing

'(1) that the party having control over the evidence had an obligation to timely produce it; (2)

that the party that failed to timely produce the evidence had a culpable state of mind; and (3) that

the missing evidence is relevant to the . . . claim or defense [of the other party] such that a

reasonable trier of fact could find that it would support that claim or defense.'"  Savor Health,

LLC v. Day, 2022 WL 1912881, at *4 (S.D.N.Y. May 17, 2022) (citation and quotation marks

omitted), adopted by 2022 WL 2315059 (S.D.N.Y. June 28, 2022).  In determining whether a

party has "a culpable state of mind," the Court need only find that the party acted with ordinary

negligence.  See Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New

York, 2021 WL 1750866, at *11 (S.D.N.Y. Mar. 31, 2021), adopted by 2021 WL 2827347

(S.D.N.Y. July 7, 2021); Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd., 330 F.R.D.

134, 138 (S.D.N.Y. 2019) (explaining that 2015 amendments to Rule 37 only required an "intent

to deprive" in the context of the destruction of evidence, rather than in the context of the

untimely production of evidence).

      Here, Elevation provides little analysis and no authority supporting its entitlement to

these sanctions in its opening brief.  While Elevation provides slightly more analysis in its reply

brief, it fails to provide any examples of cases where courts have imposed adverse inferences for

the late production of evidence, rather than for spoliation.  In fact, courts are reluctant to impose

adverse inferences as a sanction where the evidence is ultimately produced.  See Savor Health,

LLC, 2022 WL 1912881, at *7 ("[T]he Court finds that an adverse inference instruction is not

warranted given that the conduct at issue here relates to late disclosure, rather than non-

disclosure.") (citation, emphasis and quotation marks omitted); Scantibodies Lab'y, Inc. v. Church & Dwight Co., 2016 WL 11271874, at *36 (S.D.N.Y. Nov. 4, 2016) ("[T]he bulk of Plaintiff's conduct that this Court has found sanctionable relates to late disclosure, rather than non-disclosure, and thus an adverse-inference charge would not fit the circumstances presented.") (emphasis in original), adopted by 2017 WL 605303 (S.D.N.Y. Feb. 15, 2017); Phoenix Four, Inc. v. Strategic Resources Corp., 2006 WL 1409413, at *7 (S.D.N.Y. May 23, 2006) (declining to impose adverse inferences where defendants produced evidence after the close of discovery); Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd., 330 F.R.D. 134, 139 (S.D.N.Y. 2019) (considering "the fact that [defendant] has come forward with the evidence" as weighing against the imposition of adverse inferences); see also Najera v. 1443 York Gotham Pizza, Inc., 2015 WL 14071988, at *2 (S.D.N.Y. May 20, 2015) ("Although the plaintiffs were entitled to the documents earlier, their ultimate production militates against the imposition of sanctions."); Johnson v. Perry, 2018 WL 623574, at *3 (S.D.N.Y. Jan. 30, 2018) ("Even a permissive adverse inference instruction is a severe remedy, as it informs the jury of a party's potential misconduct, which may be difficult for the sanctioned party to overcome.") (citation and internal quotation marks omitted), aff'd, 763 F. App'x 81 (2d Cir. 2019).

Accordingly, because the record suggests that production has indeed occurred, and because Elevation fails to articulate any prejudice outside of the untimely production of documents, lesser sanctions are more appropriate to remedy the discovery violation. See Farmer, 2015 WL 2250592, at *8 ("[A] court should always seek to impose the least harsh sanction that will remedy the discovery violation and deter such conduct in the future.") (citation and quotation marks omitted).

C.  Preclusion

The Court stated at the December 15, 2023 conference that Icon's failure to comply with the district court's October 12, 2023 order justified preclusion.  See Tr. 28:7-12 ("[P]reclusion is almost not even necessary as an order, though I'm certainly going to do it, because you're obligated to produce what you're obligated to produce.  And if you fail to timely produce it, the rules automatically preclude you from [using] it.");  accord Mem. at 13.  Rather than attempt to remedy its failure, evidence shows that Icon persisted in its noncompliance by failing to produce critical categories of responsive documents until February 2024.

In determining whether preclusion of evidence is an appropriate sanction, a court should consider: "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the excluded evidence; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new evidence; and (4) the possibility of a continuance." Ferdman v. CBS Interactive Inc., 342 F. Supp. 3d 515, 527 (S.D.N.Y. 2018) (citation and alterations omitted); see Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006); accord Grande v. 48 Rockefeller Corp., 2023 WL 5162418, at *14 (S.D.N.Y. Aug. 11, 2023).  "Bad faith is not required to merit preclusion under Rule 37, but can be taken into account as an explanation for a party's failure to comply with discovery orders."  New Chapter, Inc. v. Advanced Nutrition by Zahler Corp., 2024 WL 981055, at *4 (E.D.N.Y. Mar. 7, 2024) (citing Design Strategy, Inc. v. Davis, 469 F.3d 284, 296 (2d Cir. 2006)).  Here, a review of the relevant factors leads the Court to conclude that preclusion of some evidence is warranted.

As to the first factor, Icon's only explanation for its failure to comply with its discovery obligations is that it was the fault of McKenna, not Icon itself.  As noted, we find culpability on the part of Icon in particular with respect to their efforts to produce documents.  Thus, this factor

weighs in favor of preclusion.

      As to the second factor, Icon does not contend that the precluded evidence is relevant to its case. Indeed, Icon appears to concede that the evidence useful in proving its case was timely produced. See Icon Opp. at 12 ("The discovery provided by Icon and the Third-Party Defendants included documents and testimony demonstrating the delivery by Icon of two shipments of Test Kits to Elevation Health, the acceptance of such deliveries by Elevation Health, and non-payment for the second shipment. . . . To the extent that a more fulsome production was required, it has now been made."). Thus, Icon provides no reason why precluding its use of the late-produced evidence would provide an unfair advantage to Elevation. Cf. ABKCO Music & Recs., Inc. v. Coda Publ'g, Ltd., 2022 WL 4536820, at *6 (S.D.N.Y. Sept. 28, 2022) (finding that preclusion that results in party being "unable to continue to pursue their claims" weighs against preclusion). Absent any explanation of the importance of the evidence to Icon's — or any of the Icon Parties' — case, this factor weighs in favor of preclusion.

      As to the third factor, Elevation has suffered prejudice as a result of Icon's failure to produce — principally because it has been denied the opportunity to include questioning about these documents in the depositions it has already taken of Icon. See Reply at 13 (Elevation has "deposed all the witnesses without these documents."). Courts find that prejudice results from a failure to timely produce documents where, as here, the documents are ultimately produced after depositions occur. See Iacovacci v. Brevet Holdings, LLC, 2023 WL 2631966, at *5 (S.D.N.Y. Mar. 24, 2023) ("Because the invoice was not produced during discovery, Defendants were deprived of the opportunity to discover, take depositions, and respond.") (citation and quotation marks omitted), reconsideration denied, 2023 WL 4118086 (S.D.N.Y. June 22, 2023); accord Capitol Recs., LLC v. Escape Media Grp., Inc., 2014 WL 12698683, at *10 (S.D.N.Y. May 28,

2014) (finding that inability to depose a witness about untimely-produced documents constitutes prejudice warranting sanctions under Rule 37), adopted by 2015 WL 1402049 (S.D.N.Y. Mar. 25, 2015); see also Wade v. Nassau Cnty., 674 F. App'x 96, 97-98 (2d Cir. 2017) (affirming dismissal where "the defendants [ ] had actively defended [the] case" and "would be prejudiced by further delay").  While such prejudice, in some instances, may be resolved through ordering additional depositions, see, e.g., ABKCO Music & Recs., Inc., 2022 WL 4536820, at *7, the remedying of actual prejudice is not the sole purpose of sanctions.  Icon's "attempt to introduce new evidence after the agreed-upon discovery deadline has lapsed is precisely the kind of 'sandbagging' that Rule 37 seeks to prevent."  Mail Am. Commc'ns, Inc. v. World Healing Ctr. Church, Inc., 2021 WL 1298925, at *3 (S.D.N.Y. Apr. 7, 2021).  Thus, while the prejudice suffered may be cured through other means, the Court concludes that this factor weighs in favor of preclusion.

As to the final factor, Icon argues that a continuance would resolve any prejudice suffered by Elevation.  See Icon Opp. at 19.  However, while a "continuance is always a possibility," Icon "should not be permitted to upset a discovery schedule which was extremely liberal and to which their adversaries adhered."  Downey v. Adloox Inc., 2018 WL 794592, at *2 (S.D.N.Y. Feb. 8, 2018) (alterations omitted) (quoting Pal v. New York Univ., 2008 WL 2627614, at *6 (S.D.N.Y. June 30, 2008)).  The cases cited by Icon in support arise in different contexts.  For example, in Coene v. 3M Co., 303 F.R.D. 32, 45 (W.D.N.Y. 2014), the court permitted "limited discovery related to the new [expert] opinion and to supplement its expert report" in an effort to remedy the prejudice stemming from the late production.  In the instant case, the prejudice to Elevation could only be resolved by allowing new depositions and permitting a round of supplemental discovery.  The other case cited by Icon, Ritchie Risk-Linked

Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 162 (S.D.N.Y. 2012), is also distinguishable in that the proposed preclusion would have prevented the sanctioned party from "pursuing $12–plus million in damages."  As just discussed, the Icon Parties have never shown their need for any of the late-produced documents.  In sum, while a continuance is possible, Icon should not be allowed to avoid the consequences of its misconduct by prolonging what has already been "a long and tortuous case."  Chen v. New Trend Apparel, Inc., 8 F. Supp. 3d 406, 435 (S.D.N.Y. 2014) ("[G]ranting a continuance at this stage . . . would prolong what has become a long and tortuous case history, and would reward the [ ] defendants for disregarding this court's orders . . . ."); see Capitol Recs., LLC, 2014 WL 12698683, at *11 (continuance inappropriate where fact discovery was initially set to close a year prior and where the court granted multiple extension and resolved multiple discovery disputes).

Accordingly, Icon will be precluded from relying on evidence that was produced after the discovery deadline of December 31, 2023.  See Downey, 2018 WL 794592, at *2 (collecting cases); see also Fleming v. Verizon New York, Inc., 2006 WL 2709766, at *7-8 (S.D.N.Y. Sept. 22, 2006) (noting the purpose of Fed. R. Civ. P. 37(c)(1) is to "prevent the practice of 'sandbagging' an opposing party with new evidence").[10]

---

[10] We fix the date as of the December 31, 2023, discovery cutoff—rather than the October 19, 2023, deadline for production—in recognition of Icon's efforts to continue to produce documents before the discovery cutoff.

D.  Reasonable Expenses

Fed. R. Civ. P. 37(b)(2)(C) provides that upon a finding that a party disobeyed a court

order,

> the court must order the disobedient party, the attorney advising that party, or
> both to pay the reasonable expenses, including attorney's fees, caused by the
> failure, unless the failure was substantially justified or other circumstances make
> an award of expenses unjust.

An order requiring a party to reimburse an opposing party for the expenses resulting from

noncompliance is the "mildest" sanction, Cine Forty-Second St. Theatre Corp. v. Allied Artists

Pictures Corp., 602 F.2d 1062, 1066 (2d Cir. 1979), and monetary sanctions for noncompliance

"are the norm, not the exception, when a party is required to engage in motion practice in order

to obtain the discovery to which it is entitled," Suarez v. Liquid Blue, Inc., 2024 WL 2058166, at

*2 (S.D.N.Y. May 7, 2024) (citation and quotation marks omitted); accord Uttarwar v. Lazard

Asset Mgmt. LLC, 2024 WL 1500980, at *3 (S.D.N.Y. Mar. 22, 2024).

As with sanctions generally, "[b]oth logic and the text of Rule 37(b)(2)(C) dictate that a

court may impose sanctions in a targeted way against the actors whom it identifies as responsible

for misconduct, whether those be parties, their attorneys, or both." Kyros L. P.C. v. World

Wrestling Ent., Inc., 78 F.4th 532, 546 (2d Cir. 2023), cert. denied, 144 S. Ct. 822, 218 L. Ed. 2d

31 (2024). Here, Icon's only opposition to this request is that "[h]aving done nothing wrong,"

the monetary sanctions should not be its burden but McKenna's. See Icon Opp. at 19. As

already discussed at length, we reject Icon's contention that they have "done nothing wrong."

Having hired an attorney who generated unnecessary expenses for an opposing party, and having

been given indications that the attorney was not properly attending to discovery, Icon should

bear responsibility for making its adversary whole. Because "the burden is on the disobedient

party to avoid expenses by showing that his failure is justified or that special circumstances make

an award of expenses unjust," <u>Wang v. Shun Lee Palace Rest., Inc.</u>, 2023 WL 5022758, at *2 (S.D.N.Y. July 24, 2023) (citation and quotation marks omitted), and having failed to meet this burden, Elevation is entitled to reasonable expenses, including attorney's fees, <u>see</u> <u>Suarez v. Liquid Blue, Inc.</u>, 2024 WL 2058166, at *3 (S.D.N.Y. May 7, 2024) (awarding fees after three months of noncompliance).

<u>Conclusion</u>

For the foregoing reasons, Elevation's motion for sanctions (Docket ## 111, 112) is granted in part and denied in part.  Elevation is granted the following relief:

1. Icon is precluded from relying for its case-in-chief on any documents that were produced after December 31, 2023.

2. Elevation is entitled to reasonable expenses caused by Icon's failure to comply with the district court's and this Court's orders.  The parties are encouraged to discuss settlement of Elevation's expenses (including attorney's fees) at their earliest convenience.  If those efforts are not successful, Elevation shall file a fee application supported by declarations or affidavits substantiating its application within 30 days.  The application shall include a memorandum of law and shall comply with paragraphs 2.B through 2.F of this Court's Individual Practices.  The fee application shall provide evidence of contemporaneous time entries that relate specifically to the efforts to obtain the discovery at issue.  .

Dated: September 6, 2024

New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge