USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/3/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ICON INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> -against- <br><br> ELEVATION HEALTH LLC, <br><br> Defendant. | |
| ELEVATION HEALTH LLC, <br><br> Defendant/Counterclaim-Plaintiff, <br><br> -against- <br><br> ICON INTERNATIONAL, INC., <br><br> Plaintiff/Counterclaim-Defendant. | 1:22-cv-4304-MKV <br><br> **OPINION AND ORDER ON MOTIONS *IN LIMINE*** |
| ELEVATION HEALTH LLC, <br><br> Defendant/Third Party Plaintiff, <br><br> -against- <br><br> GYPSET, INC., DAYNA ZEGARELLI, JOE DAVIS, CLARENCE V. LEE III, MARIO GONZALES, and KHALID ITUM, <br><br> Third Party Defendants. | |

MARY KAY VYSKOCIL, United States District Judge:

This case is scheduled for trial commencing in January 14, 2025. Pending before the Court are two motions *in limine* seeking to exclude certain evidence designated by the opposing side in connection with the imminent trial. Defendant and Counterclaim/Third-Party Plaintiff Elevation Health, LLC ("Elevation") moves *in limine* to preclude Plaintiff/Counterclaim-Defendant Icon

1

International, Inc. ("Icon"), from introducing at trial an email reflecting settlement negotiations between parties, in particular, one email dated April 25, 2022. [ECF No. 151-152, 169.] Icon and certain Third-Party Defendants, Gypset, Inc. ("Gypset"), Dayna Zegarelli, Joe Davis, and Clarence V. Lee III (together, the "Third-Party Defendants") move *in limine* to exclude the testimony of Evan Phelps, Esq., designated by Elevation to proffer expert testimony at trial. [ECF No. 158]. For the following reasons, the motion to exclude the testimony of Phelps is GRANTED, and the motion to exclude the April 25, 2022 email is DENIED without prejudice.

## BACKGROUND

Elevation placed two orders for, and Icon delivered two shipments of, iHealth COVID-19 Antigen Rapid Test Kits ("Test Kits") to Elevation pursuant to those orders. *See* [ECF No. 154-1 ("Stipulation of Facts")] at ¶¶ 3, 20, 22, 23. Elevation paid Gypset for the first shipment but refused to pay Icon for the second. *Id.* at ¶¶ 3, 25. In March, Elevation's counsel sent a letter purporting to reject both the first and second shipment—the first because the Test Kits were delivered 45 days after payment and bore "extremely short expiration dates" and the second because the Test Kits were delivered "without order or authorization" and also bore "extremely short expiration dates." *Id.* at ¶¶ 26-28. In the same letter, Elevation's counsel stated that it "reserve[d] the right to resort to all other remedies under applicable law." [ECF Nos. 152-1]. Icon's counsel replied, stating that it was "prepared to expeditiously bring an action for all damages due as a result of Elevation Health's breach." [152-2].

On April 25, 2022, the managing member of Elevation emailed an Icon employee expressing a desire to "find a compromise" and proposing "splitting the losses on the product." [ECF No. 152-3 ("April 2022 Email")]. In the email, the Elevation representative makes several statements about Elevation's inability to resell the Test Kits—"short-dated product only comes at

2

a huge discount" and "the slight demand that I have found prices these at $7.00-$7.25 per two pack." *Id.* After further discussions between Icon and Elevation, Icon commenced this action on May 25, 2022 to recover the purchase price for the second shipment, alleging breach of contract. Stipulation of Facts ¶¶ 30-32; [ECF No. 1 ("Compl.")].

Elevation asserts counterclaims against Icon and third party claims against Gypset for breach of contract, seeking refund of the payment for the initial shipment and claiming it rightfully rejected the both shipments alleging that the shipments were delivered late, with short expiration dates, and without proper chain of custody documentation. *See* Stipulation of Facts ¶¶ 26-28, 35; [ECF No. 9 ("Answer") at ¶¶ 6-8]; [ECF No. 39 ("Amended Third-Party Complaint")]. Elevation also asserts claims of fraud and civil conspiracy against Icon and all Third-Party Defendants, seeking to recover the purchase price for the first shipment and punitive damages. Stipulation of Facts ¶ 35; [ECF Nos. 38 ("Amended Counterclaim")]. Specifically, Elevation alleges that it ordered and paid for Test Kits, relying on false statements by Gypset and Icon that they had such tests and could deliver them by January 5, 2022. [ECF No. 166 ("Elevation Expert Opp.") at 3]. Elevation asserts that these statements are false because Icon only became an authorized distributor of iHealth Test Kits effective February 1, 2022. *Id.* Discovery has closed and the jury trial is scheduled to begin on January 14, 2025. [ECF Nos. 18, 142].

Each side has moved *in limine* to exclude one discreet item of evidence that its adversary intends to offer into evidence at trial. Icon and the Third-Party defendants intend to offer the above-referenced April 25, 2022 email into evidence. Elevation intends to proffer expert testimony from purported FDA regulatory expert Evan Parker Phelps, an attorney. [ECF No. 165-1]. Mr. Phelps's expert report indicates that he intends to rely primarily on two documents—(1) a December 22, 2021 U.S. Food and Drug Administration Letter of Authorization to iHealth Labs,

Inc. ("iHealth") authorizing the COVID-19 Antigen Rapid Tests (the "December 21, 2021 iHealth Authorization Letter") and (2) an Authorized Distributor Agreement between iHealth and Icon for COVID-19 Antigen Home Test, effective February 1, 2022 (the "February 1, 2022 Distributor Agreement"). *See* [ECF No. 165-1 ("Phelps Expert Report") at 16-29]. Based on these documents and his experience as a lawyer specializing in FDA regulations, he offers the following opinions: (i) neither Icon nor Gypset was an authorized distributor that could lawfully distribute the Test Kits to Elevation Health prior to February 1, 2022; (ii) neither Icon nor Gypset lawfully could have been in possession of Test Kits prior to February 1, 2022; (iii) communications from Icon and Gypset indicating possession and authority to distribute Test Kits to Elevation Health prior to February 1, 2022 are not consistent with the lawful distribution of Test Kits; and (iv) Elevation Health should not have distributed the Test Kits, which were potentially counterfeit, without confirming their authenticity. *Id.* at 7-11.

## LEGAL STANDARD

The purpose of a motion *in limine* is "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (citation omitted). Evidence challenged on a motion *in limine* "should only be precluded when it is clearly inadmissible on all possible grounds." *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013) (citation and quotation marks omitted). The Court "is free to alter [motion *in limine* rulings], if appropriate, as the case progresses." *See United States v. Jacques*, 684 F.3d 324, 328 n.1 (2d Cir. 2012). A ruling on a motion *in limine* "is subject to change when the case unfolds." *See Palmieri v. Defaria*, 88 F.3d 136, 139 (2d Cir. 1996); *see also Wilder v. World of Boxing LLC*, 220 F. Supp. 3d 473, 479 (S.D.N.Y. 2016) (citation omitted) ("A court's

4

decision on the admissibility of evidence on a motion *in limine* may be subject to change when the case unfolds . . . because the actual evidence changes from that proffered by the movant.").

**DISCUSSION**

I.  **Testimony of Proposed Expert Evan Phelps Esq.**

Icon argues that Phelps's testimony should be excluded because he is not qualified to offer the opinions in his expert report, his opinions are not based on reliable methodology, and his opinions are impermissible legal conclusions. [ECF No. 160 ("Icon Phelps Mem")].[1] According to Icon, Phelps's experience as a lawyer specializing in FDA regulations is not sufficiently related to his opinions regarding whether Icon was an authorized distributor of iHealth test kits prior to February 2022 as his opinions are not based on FDA regulations and the documents on which he relied do not support his conclusions. *Id.* at 6-10. Elevation disagrees and points to an FDA regulation that requires iHealth to identify authorized distributors to the FDA as reliable support for his opinion that Icon and Gypset could not lawfully have distributed or possessed iHealth test kits before February 2022. [ECF No. 166 ("Phelps Def. Opp.") at 7-8].

Icon also argues that Phelps's testimony should be excluded because each of his opinions offer improper legal conclusions as to whether Icon and Gypset acted "lawfully" or were "legally prohibited from further distributing the tests." *Id.* at 11. Seemingly conceding that Phelps's opinions are legal conclusions, Elevation argues that they are permissible because they are not the "*ultimate* legal conclusions" in the case since there is no cause of action for violating FDA regulations. Phelps Def. Opp. at 8-9 (emphasis added). But Elevation points to no case law that states that an expert may offer legal conclusions as long as they are not the *ultimate* legal conclusions of the case. In fact, Second Circuit precedent "require[es] exclusion of expert

---

[1] Icon and Third-party Defendants moved together to exclude Phelps's testimony. For efficiency, the Court refers only to Icon here.

testimony that expresses a legal conclusion." *See, e.g.*, *Hygh v. Jacobs,* 961 F.2d 359, 363 (2d Cir. 1992). Expert testimony is not permitted if it, "usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994); *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) ("[E]xperience is hardly a qualification for construing a document for its legal effect when there is a knowledgeable [judge] whose exclusive province it is to instruct the jury on the law."). Here, Phelps's proposed opinions are legal conclusions on their face and improperly invade the province of the jury to apply the law to the facts. Phelps states that: (i) neither Icon nor Gypset could "lawfully distribute" or "lawfully" possses iHealth test kits by a certain date; (ii) that Icon and Gypset's statements "indicating the possession and authority to distribute" prior to that date were thus false; (iii) that the test kits that were distributed were "potentially counterfeit" and as such, Icon and Gypset were "legally prohibited from further distributing the tests without first confirming their authenticity. Phelps Expert Report at 7-11.

Further "[o]ne of the fundamental requirements of Rule 702 is that the proposed testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, 552 F. Supp. 3d 427, 430 (S.D.N.Y. 2021). Testimony only qualifies as an "expert opinion" if it "concerns matters that the average juror is not capable of understanding on his or her own." *United States v. Mejia*, 545 F.3d 179, 194 (2d Cir.2008); *see United States v. Amuso,* 21 F.3d 1251, 1263 (2d Cir.1994) ("A district court may commit manifest error by admitting expert testimony where . . . the subject matter of the expert's testimony is not beyond the ken of the average juror."). Here Phelps's determination that Gypset and Icon were not legally authorized to possess iHealth test kits is largely based on the dates of two documents—one authorizing iHealth test kits themselves and the other apparently permitting

6

Icon to distribute those kits. Elevation's argument does not require complex analysis of these documents beyond the ken of the average juror. Icon's motion *in limine* is therefore GRANTED.

## II.  Elevation's Offer of Compromise

Elevation seeks a ruling prohibiting Icon from introducing an email sent by a principal of Elevation to a principal of Icon on April 22, 2022 (the "April 2022 email"). [ECF No. 153 ("Def. Settlement Memo")].[2] In short, Elevation contends that the email constitutes a settlement offer or negotiation that is inadmissible pursuant to Federal Rule of Evidence 408. *Id.* at 4. Elevation argues that Rule 408 applies even though this case was not pending at the time the email was sent. *Id.* Icon, in its opposition does not dispute that the April 2022 email constitutes a settlement offer within the scope of Rule 408, but argues that it intends to use the email for a permissible purpose under the Rule. [ECF No. 167 ("Pl. Settlement Opp.").][3]

Rule 408 prohibits admitting an offer or acceptance of settlement, "conduct or . . . statement[s] made during compromise negotiations" *for the purpose of "prov[ing] or disprove[ing] the validity or amount of a disputed claim* or *to impeach by a prior inconsistent statement or a contradiction*." *See* Fed. R. Evid. 408. This rule "codifies the long-standing axiom in federal courts that compromises proposed . . . are not evidence of an admission of the validity . . . of the claim or the amount of damage." *Rein v. Socialist People's Libyan Arab Jamahiriya*, 568 F.3d 345, 351–52 (2d Cir. 2009). However, a court "may admit this evidence for another purpose[.]" *Id.* The trial judge "has broad discretion as to whether to admit evidence of settlement

---

[2] Elevation moves generally to "exclude[e] from trial evidence of settlement negotiations between the parties." [ECF No. 151]. However, Elevation's memorandum of law in support of its motion focuses only on excluding the April 2022 email. Elevation has not identified any other evidence of offers of compromise. Accordingly, the Court construes its motion to preclude the April 2022 email specifically. Of course, pursuant to FRE 408, evidence of settlement negotiations is generally inadmissible.

[3] Icon and Third-party Defendants together oppose the motion *in limine* to exclude the April 2022 email. For efficiency, the Court refers only to Icon here.

. . . offered for 'another purpose.'" *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 293 (2d Cir. 1999); *see also PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*, 520 F.3d 109, 116 (2d Cir. 2008) ("Although Rule 408 speaks categorically of the inadmissibility of settlement evidence to prove the validity or invalidity of a claim, the terms of the exception are less categorical. The exception says only that this rule does not require exclusion when the evidence is offered for another purpose[.]") (quotation marks omitted).

In applying the "another purpose" exception to Rule 408, "the trial judge should weigh the need for such evidence against the potentiality of discouraging future settlement negotiations." *Id.* Finally, before permitting the admission of evidence, the Court must consider whether the "probative value [of the evidence] is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See* Fed. R. Evid. 403.

As a threshold matter, the Court agrees that statements within the April 2022 email constitute offers of settlement under Rule 408. Though no litigation had commenced between the parties, by April 2022 lawyers had exchanged letters regarding the shipments, Elevation had "reserve[d] the right to resort to all other remedies under applicable law," and Icon had replied that it was "prepared to expeditiously bring an action for all damages due as a result of Elevation Health's breach." *See* [ECF Nos. 152-1-152-3]; *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 827 (2d Cir. 1992) ("[W]here a party is represented by counsel, threatens litigation and has initiated the first administrative steps in that litigation, any offer made between attorneys will be presumed to be an offer within the scope of Rule 408."). Accordingly, Elevation's offer to "compromise" by "splitting the losses on the product" appears to have been an offer conditioned on the promise by both parties not to bring suit and thus a "compromise offer" generally inadmissible under Rule

8

408, *see* April 2022 email, *Sheng v. M&TBank Corp.*, 848 F.3d 78, 85 (2d Cir. 2017). Accordingly, the offer and related statements made in the April 2022 email are inadmissible if offered "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." *See* Fed. R. Evid. 408.

Icon asserts that it intends to introduce the April 2022 email for four purposes permissible under Rule 408. Specifically, Icon states that it intends to use the April 2022 email to: (1) show that the true motivation behind Elevation's belated attempt to reject both shipments was its inability to sell the Test Kits at a profit; (2) counter Elevation's assertion that the Test Kits were unmarketable; (3) demonstrate that Elevation had no real concerns about the Test Kits being counterfeit; and (4) attack the sender's credibility in the event he perjures himself at trial. Pl. Settlement Opp. at 6-7. In its reply, Elevation argues that each of these potential uses of the April 2022 email are impermissible. Pl. Settlement Reply at 2-6.

The Court agrees with Elevation's analysis of the fourth proposed purpose for the April 2022 email. The text of Rule 408 expressly prohibits Icon from introducing the April 2022 email "to impeach by a prior inconsistent statement or a contradiction[.]" Fed. R. Evid. 408. This limitation was added to Rule 408 as an amendment in 2006. The two cases Icon cites as support for the assertion that it may use the settlement offer to attack the sender's credibility pre-dated the amendment. Pl. Settlement Opp. at 6-7. Advisory Committee Notes explaining the amendment state that "[s]uch broad impeachment would tend to swallow the exclusionary rule and would impair the public policy of promoting settlements." *See* Fed. R. Evid. 408 advisory committee note to 2006 amendment.

However, the April 2022 email *may* otherwise fall within the exception to the Rule 408 exclusion and prove to be admissible at trial. Elevation argues generally that if Icon's assertions

9

with respect to its first three suggested purposes for admission of the email were true—that Elevation Health's true motivation for rejecting the shipments was its inability to sell the Test Kits at a profit; Test Kits were not unmarketable; and Elevation had no real concerns about the Test Kits being counterfeit—they would generally be probative of the validity of Icon's and Elevation's claims and defenses and thus the amount of the disputed claims. Pl. Settlement Reply at 3-6. This is generally true as far as the analysis goes. As the Second Circuit has noted, "[a]ll of the evidence a party offers at trial is intended to help establish its own position and defeat the adversary's position. In a sense, all evidence offered seeks either to 'prove liability for or invalidity of [a] claim or its amount.'" *PRL USA Holdings, Inc.*, 520 F.3d at 114. However, under Elevation's reading of Rule 408, "there would be no evidence falling within the category whose exclusion is 'not require[d]' because it is 'offered for another purpose'" and the exception would be meaningless. *See id.* Instead, the "another purpose" exception allows the admission of "evidence focused on issues different from the elements of the primary claim in dispute." *See id.* (holding evidence relevant to the affirmative defense of estoppel by acquiescence could be admitted under the "another purpose" exception); *see also Converse, Inc.*, 170 F.3d at 294 (affirming district court's decision to admit settlement evidence to prove an estoppel claim because the "basic elements of estoppel" do not "overlap with factors used to determine" the elements of the primary claim).

There are several claims in this case. Statements in the April 2022 email do not appear to be relevant to the elements of Icon's breach of contract claim, nor the elements of Elevation's civil conspiracy counterclaims and third-party claims. Icon could, however, use the statements to attempt to negate Elevation's affirmative defense that it properly rejected the shipments in dispute. This use may be permissible under the "another purpose" exception because it is focused on an affirmative defense or an issue different from the elements of the primary claim in dispute. *See*

10

*PRL USA Holdings, Inc.*, 520 F.3d at 114; *Converse, Inc.*, 170 F.3d at 294. However, Icon could also use the April 2022 email to counter Elevation's claim that Icon and Gypset breached their contracts by providing unmarketable, potentially counterfeit Test Kits. This use of the evidence may be impermissible. If this purpose is impermissible, even Icon's use of the evidence in its own breach of contract case to negate Elevation's rejection defense may improperly "overlap" with the issues relevant to Elevation's breach of contract claim.

Further, the Second Circuit has stated that with respect to the "another purpose" exception, evidence of a settlement agreement may be admitted "for a purpose other than to prove or disprove the validity of the claims that [the agreement] *was meant to settle*." *Converse, Inc.*, 170 F.3d at 293 (emphasis added). It is not clear at all which of the many claims before the court Elevation's offer of compromise was intended to settle.. The April 2022 email and the statements within it may fall within the "another purpose" exception of Rule 408. However, evidence challenged on a motion *in limine* "should only be precluded when it is clearly inadmissible on all possible grounds." *Tourre*, 950 F. Supp. 2d at 675 (S.D.N.Y. 2013). Accordingly, Elevation's motion *in limine* is DENIED without prejudice.

## CONCLUSION

For these reasons, the motion to exclude the testimony of Phelps is GRANTED. The motion to exclude the April 2022 email is DENIED without prejudice. The Clerk of Court is respectfully requested to terminate docket entries 151 and 158.

**SO ORDERED.**

Date: **January 3, 2025**　　　　　　　　　　　　　　**MARY KAY VYSKOCIL**
　　　　**New York, NY**　　　　　　　　　　　　　　**United States District Judge**

11